Sonya OLITSKY and Joyce
Matthews, Plaintiffs,

v.

Peter O'MALLEY et al., Defendants.

Civ. A. No. 78–0644–MA.

United States District Court,
D. Massachusetts.

June 12, 1978.

Morris M. Goldings, Boston, Mass., for plaintiffs.

John L. Keefe, Thomas Miller, Asst. Atty. Gen., Boston, Mass., for defendants.

## OPINION

MAZZONE, District Judge.

The plaintiffs are employees of Oznemoc, Inc., a Massachusetts corporation doing business as the Naked I Lounge in Boston. They began this action on March 21, 1978 under the Civil Rights Act, 42 U.S.C. § 1983 complaining that the defendant officials, by enforcing certain "mingling regulations" at the lounge, deprived plaintiffs of rights under the First and Fifth Amendments of the United States Constitution. Plaintiffs sought a temporary restraining order and a permanent injunction prohibiting Officer O'Malley and Commissioner Jordan of the Boston Police Department, Andrea Wasserman Gargiulo, Jon C. Straight, and Richard L. Arrington, as they constitute the Licensing Board of Boston, and John Larkin, Herbert Goodwin, and Fletcher Wiley, as they constitute the Alcoholic Beverages Control Commission (A.B.C.C.) of Massachusetts, and any others acting with these persons

from preventing the plaintiffs from mingling at the lounge. In addition the plaintiffs asked that the Court declare that Condition 13 of the alcoholic beverages license and Condition 6 of the entertainment license issued by the Licensing Board, Regulation 8(B) of the Rules and Regulations for entertainment licenses promulgated by the Licensing Board, and Regulation 21 of the A.B.C.C. are void as vague and overbroad.

After a hearing on April 6, 1978, the Court denied the plaintiffs' application for the temporary restraining order. At the trial, the A.B.C.C. renewed its motion to dismiss on grounds that the complaint failed to contain a statement of jurisdiction, that it failed to state a claim against the A.B.C.C., and that the claim was not justiciable. The other defendants renewed similar motions, and asked further that the federal court abstain from exercising its jurisdiction. The Court reserved decision on these motions until after taking evidence and reviewing an agreed statement of certain facts submitted by plaintiffs and the city defendants.

■ At the outset, the Court considers the jurisdictional basis of this suit. The complaint does not refer to 28 U.S.C. § 1343(3), the statute which confers this Court's jurisdiction to redress deprivations, under color of state law, of any right, privilege or immunity secured by the United States Constitution, but plaintiffs do pray for relief, alleging a violation of 42 U.S.C. § 1983 described with particular detail. The complaint alleges facts showing the grounds of federal jurisdiction. Rule 8(a)(1), F.R.Civ.P., requires no more.

Plaintiffs are both dancers who entertain at the Naked I Lounge. Joyce Matthews has worked there since October, 1977, and Sonya Olitsky did work there from July, 1977, until the week of this final hearing. Each works a full day or night shift, dancing four 20 minute acts during each shift. Olitsky received a salary of $40 per shift, mostly paid by her agent, and she earned a commission of $30–100 per week, averaging about $50, which was paid in cash by Ray Comenzo, President of Oznemoc, Inc. and owner and current manager of the Naked I Lounge. The commission is paid on each drink bought for a dancer while she is sitting with a customer between dance acts. The commission for most drinks is one dollar. The commission for a bottle of champagne ranges from six to twenty dollars for $40–100 bottles. This "socializing with the clientele," offering "conversation and temporary companionship" is intended to "encourage patrons to return to the club again for a relaxing evening." Olitsky admitted that her objective in associating with the customers was to get them to buy more drinks.

Condition 13 of the alcoholic beverages license, Condition 6 of the entertainment license and Rule 8(B) proscribe certain activities at licensed premises, and are enforced by the Licensing board by sanctions against the licensee.[1] Regulation 21 proscribes "disorder, disturbance or illegality of any kind" on the licensed premises.[2] A.B.C.C. sanctions run against the licensee only.

On March 4, 1978, Officer O'Malley and two other officers entered the Naked I

---

1. Condition 13 states: "Entertainment, if any, must be confined to a particular place, and the entertainers must not be allowed to mingle with or circulate among the patrons."

 Condition 6 states: "Artists must not mix with patrons or circulate around the room"

 Rule 8(B) states: "8. Attire and conduct of employees, entertainers and other persons . . . ."

 "B. Mingling is forbidden except by owners and managers in the performance of their duties and waitresses and waiters involved in the service of food and beverages."

2. The Massachusetts Supreme Judicial Court recently held "illegality" was not impermissibly vague if construed to apply only to violations of statutes and regulations having the force of law including Condition 13. *Aristocratic Restaurant of Massachusetts, Inc. v. Alcoholic Beverages Control Commission* (No. 2), 1978 Mass.Adv.Sh. 580, 581, 374 N.E.2d 1192; *Aristocratic* (No. 1), 1978 Mass.Adv.Sh. 558, 563, 374 N.E.2d 1181.

Lounge, discovered dancers[3] who were employed there sitting with customers and with drinks in front of them. The officers notified the manager, Ray Comenzo, of the mingling violations. They tried to identify dancers and customers involved for any report of the violation to be prepared for the Licensing Board. Sonya Olitsky was prevented from mingling any more that night because of the officers' intervention.

It is Officer O'Malley's practice to report a violation of mingling regulations if he sees many of the dancers with customers, each with drinks. He instructs managers of licensees not to allow entertainers to mingle with customers by kissing them, putting their arms around them, soliciting drinks or sexual favors. Olitsky stated that Comenzo had instructed her to socialize with the customers, but not to give out her phone number, not to perform any sexual acts, not to take patrons' money, not to let anyone touch her, not to touch anyone, and not to suggest her sexual availability. Although she and her manager were aware of the mingling regulations, they behaved as if compliance with these instructions was compliance with the mingling regulations. Olitsky usually wore a V-neck negligee which resembled an evening gown when she mingled. She was not required to spend every night mingling between stage performances, but did so regularly and frequently. Mingling commissions represented, in an average week, twenty percent of her income. She had earned as much as one hundred dollars in commissions in a week, a third of her weekly income.

■ Although the complaint does not expand on "as an agent of the other Defendants," it does state a claim for relief against each defendant. The plaintiffs are entitled to show that members of the A.B.C.C. and Licensing Board, as well as the Police Com-

missioner and his officers did subject or cause plaintiffs to be subjected to a deprivation of constitutional rights. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). If the affirmative link between the individual officers and the other defendants is not proven, plaintiffs will not be entitled to any relief against those other defendants. See *Rizzo v. Goode,* 423 U.S. 362, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976).

■ The Boston defendants argue that because no sanctions can be brought against Olitsky and Matthews for their acts of mingling, these plaintiffs present no genuine controversy. Plaintiffs ask the Court to declare their own rights to continue mingling despite the conditions and rules promulgated to prevent such conduct on licensed premises. They assert the defendants' actions have caused them to de deprived of First Amendment rights and their interests in earning a living. That they cannot be brought before the Licensing Board or A.B.C.C. means they must initiate an action in order to present any claim or challenge to the mingling regulations. Plaintiffs as dancers at licensed premises have a direct interest in the mingling regulations. Their verified complaint alleges that both do mingle regularly at the Naked I Lounge. The Boston defendants admitted in their Answer that "some members of the Police Department may act from time to time as agents of the Boston Licensing Board in assisting to enforce said Board's rules and regulations," and that Officer O'Malley did enter the Naked I Lounge on March 4, 1978 to determine compliance with those rules. As concerns the Boston defendants, the plaintiffs' complaint is justiciable.[4]

---

**3.** The officers, experienced in enforcing the regulations of the Licensing Board, knew some people to be dancers, and assumed others to be dancers because of their clothing.

**4.** The complaint does not allege that Matthews has ever been ordered by defendants to stay in the dressing room instead of mingling. Matthews has standing to bring this action where

the threat of interference with the constitutional rights she claims is real and immediate. That she will continue to mingle and the defendants continue to prohibit and seek to prevent her mingling is certain. The March 4 episode described in the complaint involving Olitsky is generally reoccurring. The executive secretary of the Licensing Board testified that most of the sixty reports filed by the Boston

■ The Court does not abstain from deciding this case as the Boston defendants request. Plaintiffs do not ask the Court to enjoin any state proceeding, either judicial or administrative. Plaintiffs would not be subject to either. They seek declaratory relief and such order which may be necessary to ensure future compliance with the declaration. The Court has the power to enjoin violations of 42 U.S.C. § 1983 and to declare the rights of the plaintiffs in an actual controversy arising under that statute. 28 U.S.C. §§ 2201, 2202. The Boston defendants assert, however, that the interests of these dancers in a declaration of rights is "obviously intertwined" with the interests of their employer which are now subject to administrative proceedings begun by the Licensing Board. Here it is not obvious that the interests of dancers and the licensee who employs them are so interrelated that the dancers must be denied access to the federal court. The Supreme Judicial Court found that a licensee did not have standing on behalf of dancers and others to raise the very issues these dancers raise here by alleging that their own rights are being affected by the mingling regulations. *Aristocratic* (No. 1), 1978 Mass. Adv.Sh. at 568–570, 374 N.E.2d 1181.

Although violations of the mingling regulations have been reported to the Licensing Board, the only Licensing Board action pending against the Naked I Lounge concerns violation for allowing open and gross lewdness by an entertainer, not mingling. This does not constitute an opportunity to raise federal issues before a state tribunal equally competent to hear them. *Steffel v. Thompson*, 415 U.S. 452, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974); *Huffman v. Pursue Ltd.*, 420 U.S. 592, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975). This Court determines the appropriateness and the merits of any declaratory relief separately from its conclusion as to the propriety of the issuance of the in-

junction requested here. *Zwickler v. Koota*, 389 U.S. 241, 254, 88 S.Ct. 391, 19 L.Ed.2d 444 (1967); *Steffel v. Thompson*, 415 U.S. at 468–473, 94 S.Ct. 1209. When considering claims premised on 42 U.S.C. § 1983, the United States Supreme Court has recognized "the paramount role Congress has assigned to the federal courts to protect constitutional rights." 415 U.S. at 472–473, 94 S.Ct. at 1222.

■ Nevertheless the Court finds that the plaintiffs' claim against the A.B.C.C. is not justiciable. This ruling was reserved until after hearing all the evidence. Despite the allegations of the complaint there has been no showing that the A.B.C.C. has caused any direct effect on the plaintiffs which is necessary to confer standing. The existence of Regulation 21 does not by itself constitute such an effect. Whether Regulation 21 might ever be enforced against the licensee which employs these dancers because the dancers mingle is necessarily dependent on whether the Licensing Board's conditions and rules are violated. See Mass.G.L. c. 138 § 64. This does not establish the nexus between the dancer's claim of right and the A.B.C.C.'s prohibition of illegality. *Flast v. Cohen*, 392 U.S. 83, 102, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968). Plaintiffs' interests do not have sufficient immediacy and reality to warrant the issuance of a declaratory judgment against the A.B.C.C. *Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 272, 61 S.Ct. 510, 85 L.Ed. 826 (1941). The A.B.C.C. acts to prohibit illegality, which is defined in terms of other statutes and regulations. It has not determined what constitutes mingling, but adopts the Licensing Board's definition of an act prohibited by the Board's authority. See *Aristocratic* (No. 2), 1978 Mass.Adv.Sh. 580, 374 N.E.2d 1192. Even where the A.B.C.C. has a "quasi-appellate" role in review

---

Police against the Naked I Lounge during the last 15 months were for mingling violations. The Court might conclude too that Olitsky continues to desire to mingle despite her quitting work at the Naked I Lounge. Olitsky testified that her uncertainty about her right to mingle influenced her decision to stop working now.

The Licensing Board has recognized that dancers such as these two commonly mingle when not performing on stage. Olitsky has not abandoned her profession. Declaratory relief may remain appropriate in her case, even though injunctive relief may be unnecessary now.

of Licensing Board actions the A.B.C.C. does not enforce the mingling regulations of the Licensing Board as the Boston defendants do. See Mass.G.L. c. 138 § 67. In review the A.B.C.C. examines the application of the regulation to particular facts, but does not supply independent judgment about the administrative decision to exercise authority by the promulgation and general enforcement of a mingling prohibition. It is this administrative decision which plaintiffs can challenge, the creation and application to their conduct of a vague and overbroad prohibition. A.B.C.C. does not become a necessary or indispensable party to this action because of its role under Mass.G.L. c. 138.

The Supreme Judicial Court of Massachusetts recently reviewed Condition 13 of the alcoholic beverages license and Regulation 21 of the A.B.C.C. in a challenge by a licensee. *Aristocratic Restaurant of Massachusetts, Inc. v. Alcoholic Beverages Control Commission* (No. 1), 1978 Mass.Adv.Sh. 558, 374 N.E.2d 1181. The Massachusetts court acknowledged the wide latitude accorded to states under the Twenty-first Amendment "to exercise controls on the exercise of First Amendment rights in establishments dispensing liquor in situations where such restraints would be unacceptable elsewhere." Considering the First Amendment interests of entertainers to be at best no greater when not performing than when performing,[5] the court followed the holding of *California v. LaRue*, 409 U.S. 109, 114–116, 93 S.Ct. 390, 34 L.Ed.2d 342 (1972), ended further consideration of First Amendment claims, and turned to Article 16 of the Declaration of Rights of the Massachusetts Constitution. 1978 Mass.Adv.Sh. at 565, 374 N.E.2d 1181. Even in the absence of "the added presumption in favor of the validity of the state regulation in this area that the Twenty-first Amendment requires,"[6] the two administrative provisions were not vague as applied to these licensees, that they had no standing to argue

that the provisions might be impermissibly vague in other factual circumstances, and that they had no standing to assert any overbreadth challenge on behalf of others. *Id.* at 563, 568–569, 374 N.E.2d 1181. The Supreme Judicial Court did construe "mingle with or circulate among" to forbid the conduct of an entertainer who "indiscriminately approaches patrons soliciting them to purchase drinks for him or her." *Id.* at 564, 374 N.E.2d at 1185. Such regulation was found to serve a significant governmental interest. Id. at 566, 374 N.E.2d 1181.

Plaintiffs argue that this Court should not adopt the conclusion of the Supreme Judicial Court that *LaRue* is ample authority to sustain Condition 13 on federal grounds. This Court finds the state decision appropriate for consideration, but is not bound to adopt its conclusions of federal law. This Court does follow the state court's authoritative construction of Condition 13. See *N.A.A.C.P. v. Button*, 371 U.S. 415, 432, 83 S.Ct. 328, 9 L.Ed.2d 405 (1963). Plaintiffs contend that *LaRue* must be limited to cases where the conduct is regulated only at licensed premises and "partake[s] more of gross sexuality than of communication." *LaRue*, 409 U.S. at 118, 93 S.Ct. at 397.

Here it has not been shown that Olitsky or Matthews engage in grossly sexual conduct or any sexual conduct which is subject to criminal sanctions. Their conduct has not been labeled "symbolic speech," such as their dancing has. See *Commonwealth v. Sees*, 1978 Mass.Adv.Sh. 536, 540–543, 373 N.E.2d 1151; *Doran v. Salem Inn, Inc.*, 422 U.S. 922, 932–933, 95 S.Ct. 2561, 45 L.Ed.2d 648 (1975); nevertheless, it is a specific form of actual association, intended by the plaintiffs solely as the means to earn commissions. While engaged in this form of association, plaintiffs naturally have an opportunity to speak.

In approaching customers indiscriminately with the intent to earn a commission,

---

5. In fact the court expressly found the entertainers when not performing were not engaged in expressive conduct. 1978 Mass.Adv.Sh. at 566, 374 N.E.2d 1181.

6. *California v. LaRue*, 409 U.S. at 118, 93 S.Ct. 390, 397.

plaintiffs conduct themselves either tacitly or openly to communicate the idea that in exchange for the price of drink (which in plaintiffs' terms amounts to "in exchange for" a commission), that the customer may receive their company temporarily.[7] The licensee believes it is commercially advantageous to pay the plaintiffs to act this way because such conduct creates an atmosphere which appears to increase patronage, and, it may be proper to conclude, increases the sale and consumption of alcoholic beverages on the premises. Can this conduct be regulated, and do the particular regulations challenged here meet the Fourteenth Amendment requirements of due process?

██ "Because First Amendment freedoms need breathing space to survive, government may regulate in the area only with narrow specificity." *N.A.A.C.P. v. Button*, 371 U.S. 415, 433, 83 S.Ct. 328, 338, 9 L.Ed.2d 405 (1963). The Licensing Board's interest is not the suppression of free expression but the regulation of the conduct's nonspeech element, the atmosphere more conducive to sales, that purely commercial aspect of the plaintiffs' conduct.

This Court has held that when "speech" and "nonspeech" elements are combined in the same course of conduct, a sufficiently important governmental interest in regulating the nonspeech element can justify incidental limitations on First Amendment freedoms. To characterize the quality of governmental interest which must appear, the Court has employed a variety of descriptive terms: compelling; substantial; subordinating; paramount; cogent; strong. Whatever imprecision inheres in these terms, we think it clear that a government regulation is sufficiently justified if it is within the constitutional power of the Government; if it furthers an important or substantial governmental interest; if the governmental interest is unrelated to the suppression of free expression; and if the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest. *United States v. O'Brien*, 391 U.S. 367, 376, 377, 88 S.Ct. 1673, 1678, 20 L.Ed.2d 672 (1968).[8]

The mingling prohibition is an administrative approach towards regulation of the sale and consumption of alcohol distinct from the bans on solicitation of drinks or solicitation for sexual activities. The latter two

---

7. In *United States v. O'Brien*, 391 U.S. 367, 376, 88 S.Ct. 1673, 1678, 20 L.Ed.2d 672 (1968), the Supreme Court rejected "the view that an apparently limitless variety of conduct can be labeled 'speech' whenever the person engaging in the conduct intends thereby to express an idea." Although plaintiffs deny it, their approaching customers indiscriminately and clad only in negligees could be viewed as suggesting sexual availability. The Court can accept the plaintiffs' declaration that their conduct is not intended to express that idea; therefore, the Court will not reach consideration whether state regulation of such sexual conduct infringes any freedom of speech. (But see *California v. LaRue*, 409 U.S. 109, 93 S.Ct. 390, 34 L.Ed.2d 342 (1972) where gross sexuality was found.) That an atmosphere is created or message sent to the customers by plaintiffs' conduct does not necessarily bring the conduct within the protections of speech. Any actual speech, incidental to the conduct, may be infringed if the conduct itself can be regulated because the infringement is incidental, unintended, and unavoidable. See *United States v. O'Brien*, 391 U.S. at 377, 88 S.Ct. 1673. See also *Ohralik v. Ohio State Bar Assn.*, ——— U.S. ———, 98 S.Ct. 1912, 56 L.Ed.2d 444 (1978).

8. An incidental restriction here runs against not only the interests of the speaker, but against the First Amendment interests of the customers. "A commercial advertisement is constitutionally protected . . . because it furthers the societal interest in the 'free flow of commercial information.'" *First National Bank of Boston v. Bellotti*, ——— U.S. ———, at ———, 98 S.Ct. 1407, 1419, 55 L.Ed.2d 707 (1978); *Bates v. State Bar of Arizona*, 433 U.S. 350, 364, 97 S.Ct. 2691, 53 L.Ed.2d 810 (1977). Nevertheless, where the court finds the governmental interest is compelling, and the correlation between that interest and the means selected to accomplish it is substantial, the means are constitutionally permitted. *Bellotti*, ——— U.S. at ———, 98 S.Ct. at 1426. See also *Craig v. Boren*, 429 U.S. 190, 97 S.Ct. 451, 50 L.Ed.2d 397 (1976). Our constitution is structured to secure a substantial correlation between governmental interest and societal interest. The customer already on the licensed premises might not have personal interests identical with his societal interest.

regulations are not challenged here, and the Court need not and properly could not conclude that those two regulations in the absence of a mingling regulation, would accomplish the same administrative goals. The judicial power does not extend to such legislative judgments.

The mingling prohibition is promulgated by the Licensing Board as authorized exercise of Massachusetts' police power in the area of regulation of establishments which dispense alcoholic beverages. Because the regulation of alcoholic beverages is involved, the Court may consider the impact of the Twenty-first Amendment upon the range of means the state might select to accomplish a complete scheme of regulation. The United States Supreme Court has held that the Twenty-first Amendment "primarily created an exception to the normal operation of the Commerce Clause."

> Even here, however, the Twenty-first Amendment does not *pro tanto* repeal the Commerce Clause, but merely requires that each provision "be considered in the light of the other, and in the context of the issues and interests at stake in any concrete case." . . . Once passing beyond consideration of the Commerce Clause, the relevance of the Twenty-first Amendment to other constitutional provisions becomes increasingly doubtful. . . .
> Cases involving individual rights protected by the Due Process Clause have been treated in sharp contrast [to cases involving regulations of purely economic matters]. *Craig v. Boren*, 429 U.S. 190, 206, 207, 97 S.Ct. 451, 461–462, 50 L.Ed.2d 397 (1976).

In *California v. LaRue* the United States Supreme Court has said that the Twenty-first Amendment gave states "something more than the normal state authority over public health, welfare, and morals." 409 U.S. at 114, 93 S.Ct. at 395. The Supreme Court said further that California, regulating the conditions it found in establishments holding liquor licenses, was not limited by the standards of *United States v. O'Brien*, 391 U.S. 367, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968), even though some forms of communicative conduct might be affect-

ed. 409 U.S. at 116, 93 S.Ct. 390. In *Craig v. Boren*, the Supreme Court suggested that the fact that *LaRue* involved regulated conduct which did "partake more of gross sexuality than of communication" was crucial to that decision. 429 U.S. at 207, 97 S.Ct. at 462. The Supreme Court also held that California's limiting the scope of its regulation to establishments holding liquor licenses was crucial. *Doran v. Salem Inn, Inc.*, 422 U.S. 922, 933, 934, 95 S.Ct. 2561, 45 L.Ed.2d 648 (1975). Without both elements present, where state regulations affect conduct which is entitled to First Amendment protections, an *O'Brien* analysis must be made. *Doran v. Salem Inn, Inc.*, 422 U.S. at 934, 95 S.Ct. 2561; *Craig v. Boren*, 429 U.S. at 207, 97 S.Ct. 451.

Condition 6 and Rule 8(B) relate to entertainment licenses. Condition 13 is on the alcoholic beverages license, and prohibits mingling only by entertainers. See *Aristocratic* (No. 1), 1978 Mass.Adv.Sh. at 564, 374 N.E.2d 1181. Under the regulatory scheme it would appear that any establishment, if affected by Condition 13, would also hold an entertainment license, and thus be bound by Condition 6 and Rule 8(B) in addition. If an establishment held an entertainment license but no alcoholic beverages license, the *Doran v. Salem Inn, Inc.* situation might occur. Here the plaintiffs' employer holds both licenses, and the plaintiffs' conduct has not been shown to "partake more of gross sexuality than of communication," therefore, the *O'Brien* analysis must be applied. Plaintiffs have conceded the authority of the state to regulate conduct which is grossly sexual at such premises, but claim that where conduct which is not grossly sexual, such as plaintiffs' conduct, is involved, and where the same regulation might prohibit plaintiffs' conduct, the regulation must be voided under the Fourteenth Amendment because of its vagueness or overbreadth.

The test set out in *United States v. O'Brien* has four parts. The power of the state through the agency of the Boston Licensing Board to regulate mingling in licensed premises in the City of Boston has

not been challenged here. That the regulation furthers an important governmental interest, the control of the sale and consumption of alcoholic beverages has been already discussed. There has been no suggestion that this governmental interest is related to the suppression of free expression. The fourth criterion is "if the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest." *United States v. O'Brien*, 391 U.S. at 377, 88 S.Ct. at 1679. Plaintiffs have argued that their conduct could be adequately controlled by the other regulations of the Licensing Board, such as prohibitions of solicitation of drinks and solicitation for prostitution. As discussed above, the prohibition of mingling prevents to some degree solicitation of drinks and solicitation for prostitution, but it prevents a different conduct too, which the Licensing Board has determined must be prohibited. In this prohibition of mingling there is incidental restriction of plaintiffs' alleged First Amendment freedoms, but it is no greater than necessary. See *Ohralik v. Ohio State Bar Assn.*, —— U.S. ——, at —— – ——, 98 S.Ct. 1912, 56 L.Ed.2d 444 (1978).

Plaintiffs' position is that the Court must examine the Licensing Board's determination that because of the perceived consequences of mingling, mingling should be prohibited. The mingling regulation is a prophylactic solution, a prohibition not drafted in terms of a direct ban of the undesired consequence itself, but a prohibition of a conduct which as the Board determined, results in the undesired consequence. Because not all the contacts between entertainers and other employees at the Naked I Lounge lead to the undesired consequence, the language prohibiting mingling must be clear and precise. A court must be able to find whether the plaintiffs act "indiscriminately" in approaching customers with the intent of soliciting drinks to earn their commissions. If this finding cannot be made because the regulation is not precise, the regulation must be voided. "If there is an internal tension between proscription and protection in the statute, we cannot assume that, in its subsequently enforcement, ambiguities will be resolved in favor of adequate protection of First Amendment rights. Broad prophylactic rules in the area of free expression are suspect. . . . " *N.A.A.C.P. v. Button*, 371 U.S. 415, 438, 83 S.Ct. 328, 340, 9 L.Ed.2d 405 (1963).

 The Court has been presented with a transcript of a hearing before the Licensing Board on December 15, 1976 which plaintiffs assert demonstrate no basis was shown for the Licensing Board's decision to create a mingling regulation.[9] Where the plaintiffs can demonstrate restriction of alleged First Amendment rights the regulating agency may come forward to show compliance with the *O'Brien* criteria. See *N.A.A.C.P. v. Button*, 371 U.S. at 438, 83 S.Ct. 328. The burden on the defendants is not to prove the connection between mingling and acts of prostitution and violent crime which are commonly alleged to occur in and about the bars and lounges of Bos-

---

**9.** Plaintiffs contend in their brief that the failure of the Licensing Board to follow statutory rule-making procedures in Mass.G.L. c. 30A is "of constitutional dimension." *Id.* at 12. Whether the Licensing Board is an agency bound by the state's Administrative Procedure Act is now at issue in an unrelated action before the Supreme Judicial Court. This Court need not determine that issue in this action which challenges regulation of that board as vague and overbroad. This Court here examines the determination that mingling ought to be prohibited because of its impact on sale and consumption of alcoholic beverages, not to discover its procedural regularity but its substantial rationality. Such examination enables the Court to determine whether the incidental re-

strictions of the regulation are essential to the furtherance of the state's interest in controlling sale and consumption. The Court seeks a factual or rational basis, a fair determination by the administrative board, and does not face the collateral issue of whether statutory compliance exists. Compliance with the statutory procedure would not remove the need for a factual basis. Compare *California v. LaRue*, 409 U.S. 109, 115, 116, 93 S.Ct. 390, 34 L.Ed.2d 342; *Young v. American Mini Theatres*, 427 U.S. 50, 71, 96 S.Ct. 2440, 49 L.Ed.2d 310 (1976); *Women's Liberation Union of Rhode Island v. Israel*, 512 F.2d 106 (1st. Cir., 1975); *Paris Adult Theatre I v. Slaton*, 413 U.S. 49, 60–64, 93 S.Ct. 2628, 37 L.Ed.2d 446 (1973).

ton's Adult Entertainment District. The regulations here in fact are applicable throughout the City of Boston. Defendants must show and have shown that it is rational to assume mingling contributes to the increased sale and consumption of alcoholic beverages. *Paris Adult Theatre I v. Slaton*, 413 U.S. 49, 60–63, 93 S.Ct. 2628, 37 L.Ed.2d 446. Sonya Olitsky stated her purpose in mingling was to earn commissions and Officer O'Malley, in describing his practice of enforcement, emphasized he looks for drinks on the table in front of both entertainer and customer before announcing a violation of the regulation. The Court finds the testimony of both witnesses is evidence that the Licensing Board's determination that mingling occurs for the purpose of increasing sales and consumption of alcoholic beverages is rational. The restriction on the opportunity of the plaintiffs and customers to converse is incidental and essential to the furtherance of the greater governmental and societal interest embodied in the regulation.

■ This Court finds that Condition 13, as applied to the plaintiffs, is not vague. This Court concurs with the conclusion of the Supreme Judicial Court that this condition "furnishes a sufficiently definite warning so that people of common intelligence would know that the activities of the . . entertainers constituted mingling with and circulating among patrons." *Aristocratic* (No. 1), 1978 Mass.Adv.Sh. at 564, 374 N.E.2d at 1185. Compare *Broadrick v. Oklahoma*, 413 U.S. 601, 607, 608, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973). The "internal tension" found in the statutes involved in *N.A.A.C.P. v. Button* is not present in Condition 13. Condition 6 of the entertainment license uses almost identical language as the second clause of Condition 13, and is equally clear.[10] Rule 8(B) forbids mingling except by owners and managers, or waitresses and waiters involved in the service of food and beverages. It too is not vague. The three provisions are designed to prohibit the same conduct. Because the Supreme Judicial Court has construed Condition 13 to

prohibit mingling, mixing or circulating for the purpose of encouraging sales of alcoholic drinks, the presence of Condition 6 and Rule 8(B) in the entertainment license section of Licensing Board regulations is not fatal, for the restrictive provisions can be applicable only where alcoholic beverages are available on the premises. Compare *Doran v. Salem Inn, Inc.*, 422 U.S. 922, 95 S.Ct. 2561, 45 L.Ed.2d 648 (1975).

■ Plaintiffs' overbreadth challenge also fails. The United States Supreme Court has set a strict standard for court's hearing such claims:

> Embedded in the traditional rules governing constitutional adjudication is the principle that a person to whom a statute may constitutionally be applied will not be heard to challenge that statute on the ground that it may conceivably be applied unconstitutionally to others in other situations not before the Court. . . .
> The consequence of our departure from traditional rules of standing in the First Amendment area is that any enforcement of a statute thus placed at issue is totally forbidden until the unless a limiting construction or partial invalidation so narrows it as to remove the seeming threat or deterrence to constitutionally protected expression. Application of the overbreadth doctrine in this manner is, manifestly, strong medicine. It has been employed by the Court sparingly and only as a last resort. . . . (I)ts function . . . attenuates as the otherwise unprotected behavior that it forbids the State to sanction moves from "pure speech" towards conduct and that conduct—even if expressive—falls within the scope of otherwise valid criminal laws that reflect legitimate state interests in maintaining comprehensive controls over harmful, constitutionally unprotected conduct. *Broadrick v. Oklahoma*, 413 U.S. 601, 610, 613, 615, 93 S.Ct. 2908, 2915, 2916, 2917, 37 L.Ed.2d 830.

The United States Supreme Court in *Broadrick* found the challenged civil statute was not substantially overbroad under the cir-

10. Condition 3 on the entertainment license is similar to the first clause.

cumstances presented, and refused to speculate about other cases. 413 U.S. at 615, 93 S.Ct. 2908. Compare *Young v. American Mini Theatres*, 427 U.S. 50, 60, 96 S.Ct. 2440, 49 L.Ed.2d 310 (1976).

This Court finds the mingling regulations are not overbroad or vague in plaintiffs' case. Furthermore, the provisions have been narrowly construed by the Supreme Judicial Court, and cannot be found to have a real or substantial deterrent effect upon others whose conduct may be at the limits of the prohibition's proper range. Accordingly, the Court concludes that the three mingling regulations, Condition 13, Condition 6, and Rule 8(B), are valid and do not unconstitutionally infringe any rights plaintiffs may claim under the First Amendment.[11] The injunctive and declaratory relief sought is DENIED, and the complaint is dismissed.

11. Although it was not raised in their brief, plaintiffs alleged that their "right to property by earning a living as a dancer and a hostess, guaranteed by the Fifth and Fourteenth Amendments" was similarly infringed by the vagueness and overbreadth of the mingling regulations. Although the plaintiffs have not directed any further effort to establish a basis for the relief claimed upon this theory, the Court has considered it. Traditionally courts have afforded claims that First Amendment rights have been infringed closer scrutiny than other claims. This second claim is also dismissed.