Sonya OLITSKY et al.,
Plaintiffs-Appellants,

v.

Peter O'MALLEY et al.,
Defendants-Appellees.

No. 78–1410.

United States Court of Appeals,
First Circuit.

Argued Jan. 3, 1979.

Decided April 18, 1979.

Morris M. Goldings, Boston, Mass., with whom Kenneth H. Tatarian, and Mahoney, Hawkes & Goldings, Boston, Mass., were on brief, for plaintiffs-appellants.

Thomas Miller, Asst. Atty. Gen., Boston, Mass., with whom Francis X. Bellotti, Atty. Gen., Boston, Mass., were on brief, for defendants-appellees, Larkin, Goodwin and Wiley.

John L. Keefe, Asst. Corporation Counsel, Boston, Mass., for defendants-appellees, O'Malley, et al.

Before COFFIN, Chief Judge, CAMPBELL and BOWNES, Circuit Judges.

BOWNES, Circuit Judge.

Plaintiffs-appellants Sonya Olitsky and Joyce Matthews appeal the decision of the district court, 453 F.Supp. 1052 (D.Mass. 1978), denying the injunctive and declaratory relief sought and dismissing their complaint. Plaintiffs brought their action under 42 U.S.C. § 1983 against defendants, Boston Police Officer Peter O'Malley, Boston Police Commissioner Joseph Jordan, and members of the Boston Licensing Board, and the members of the Alcoholic Beverages Control Commission of the Commonwealth of Massachusetts (ABCC).

Plaintiffs were employed as dancers and hostesses at the Naked I Lounge, which is located at 666 Washington Street in Boston, Massachusetts. Plaintiffs charged in their complaint that defendant officials deprived them of their first amendment right to freedom of speech, and their fifth amendment right to earn a living (deprivation of property without due process of law) via the fourteenth amendment by enforcing the so-called "mingling regulations" at the lounge.[1] Plaintiffs sought a temporary restraining order and permanent injunction against defendants and all others who might prevent them from mingling in the lounge. They also asked the district court to declare the mingling regulations and Regulation 21 of the ABCC[2] unconstitutional because they are vague and overbroad.

After conducting a one day hearing, the district court refused to grant the temporary restraining order. It ruled that plaintiffs' claim against the ABCC was not justiciable and held that the challenged mingling regulations were neither vague nor overboard. The first and fifth amendment constitutional claims were dismissed.

At the outset, we summarize the pertinent facts. Both entertainers were paid a weekly salary for performing four dance acts per daily shift. Additionally, they earned a commission for each drink purchased by a customer for them between acts.[3] Olitsky testified that Ray Comenzo, the owner and manager of the Naked I Lounge paid the commission to her in cash and that she averaged about $50 per week in commissions. Olitsky explained that she earned the commission for "[s]ocializing with the clientele," which "entailed conversation and temporary companionship for those coming to the club." Her primary

---

1. Boston Licensing Board entertainment license Regulation 8(B) provides:

   8. Attire and conduct of employees, entertainers, and other persons:

   .   .   .   .   .

   .B. Mingling is forbidden except by owners and managers in the performance of their duties and waitresses and waiters involved in the service of food and beverages.

   Boston Licensing Board entertainment license Condition 6 provides:

   6. Artists must not mix with patrons or circulate around the room.

   Boston Licensing Board alcoholic beverages license Condition 13 provides:

   THIRTEENTH: Entertainment, if any, must be confined to a particular place, and the entertainers must not be allowed to mingle with or circulate among the patrons.

2. Massachusetts Alcoholic Beverages Control Commission Regulation 21 provides:

   No licensee for the sale of alcoholic beverages shall permit any disorder, disturbance or illegality of any kind to take place in or on the licensed premises. The licensee shall be responsible therefor, whether present or not.

3. A dancer/hostess received a commission of $1 for most drinks. If the customer purchased a $40 bottle of champagne, her commission was $6, for a $75 bottle, she earned $12, and for a $100 bottle of champagne, she received a commission of $20.

objective in mingling with the clientele was, of course, to get them to buy more drinks. Olitsky testified that Comenzo instructed her when she was hired that she was to socialize with customers, but that he forbade sexual solicitation, touching customers or permitting customers to touch her, taking money or giving out her phone number.

On March 4, 1978, Officer O'Malley and two other Boston police officers entered the Naked I Lounge and observed performers sitting with customers with drinks in front of them. The officers notified Comenzo of the mingling violations. Officer O'Malley testified that it was his practice to instruct the managers of licensees, including Comenzo, that the entertainers could not "sit with customers and solicit drinks, solicit sex, insinuate they're going to give them sex, fondle them, kiss them, put their arms around them." Olitsky testified that Officer O'Malley's intervention prevented her from mingling with patrons on March 4, 1978, but that she recommenced these activities after that day.

Plaintiffs raise two issues on appeal. First, they argue that the trial court erred in ruling that the mingling regulations do not violate plaintiffs' first and fourteenth amendment rights.[4] Second, plaintiffs maintain that the trial court erred in ruling that plaintiffs did not present a justiciable claim against the ABCC. We treat these in reverse order.

### A. *The Justiciability Issue*

Plaintiffs' contention that the trial court "failed to account for the established connection" between a violation of the Licensing Board's regulations and the ABCC's Regulation 21 puts the shoe on the wrong foot. The failure below was not that of the

trial court, but belonged to the plaintiffs who failed to establish more than a speculative first amendment claim against the ABCC.[5] Plaintiffs' attack on the ABCC for the mingling regulation is misdirected. As the trial court correctly perceived, "The A.B.C.C. acts to prohibit illegality, which is defined in terms of other statutes and regulations. It has not determined what constitutes mingling, but adopts the Licensing Board's definition of an act prohibited by the Board's authority." *Olitsky v. O'Malley, supra,* 453 F.Supp. at 1056.

Plaintiffs point to the case of *Aristocratic Restaurant of Massachusetts, Inc. v. Alcoholic Beverages Control Commission* (No. 1), —— Mass. ——, 374 N.E.2d 1181 (1978), *appeal dismissed* —— U.S. ——, 99 S.Ct. 58, 58 L.Ed.2d 96 (1978), in which the ABCC used Regulation 21 to sustain the Licensing Board's suspension of a licensee's liquor license for employee mingling. This, plaintiffs posit, sufficiently substantiates their claim of the "established connection" between a mingling violation and the harm that may be caused them by the ABCC's possible future recourse to Regulation 21.

We do not view the ABCC's past administrative action against the licensee in *Aristocratic No. 1* or the mere existence of Regulation 21,[6] as adequate bases for these plaintiffs to meet the threshold requirement of an actual case or controversy. U.S. Const. art. III § 2; 28 U.S.C. § 2201. Plaintiffs have failed to show that the ABCC has caused or is likely to cause them a cognizable injury through Regulation 21. As the ABCC asserts, not every mingling violation reported to it by the Licensing Board triggers enforcement through Regulation 21.

Plaintiffs cite *Broadrick v. Oklahoma,* 413 U.S. 601, 612, 93 S.Ct. 2908, 37 L.Ed.2d 830

---

**4.** The fifth amendment claim is not before us on appeal.

**5.** In their complaint, plaintiffs allege that Officer O'Malley was acting as agent for all other named defendants when he entered the Naked I Lounge on March 4, 1978, and told Sonya Olitsky not to mingle with the patrons. At trial, however, plaintiffs were unable to substantiate this claim and the ABCC conclusively established that at no time was O'Malley working for or connected with the ABCC.

**6.** As the trial court noted in its decision, the Massachusetts Supreme Judicial Court held in *Aristocratic Restaurant of Massachusetts, Inc. v. Alcoholic Beverages Control Commission* (No. 2), —— Mass. ——, 374 N.E.2d 1192, 1193 (1978), the word "illegality" as used in Regulation 21 is not impermissibly vague.

(1973), for the proposition that where first amendment rights are involved, the traditional rules of standing are relaxed. However, *Broadrick* speaks to the standing of a plaintiff to raise the issue of the facial overbreadth of a statute or regulation as it might infringe on the rights of the parties not before the court. In this case, plaintiffs challenge the constitutionality of these mingling regulations *as applied to them.* We do not doubt plaintiffs' standing to challenge the mingling regulations, but we fail to see how their claim against the ABCC meets the threshold requirements of ripeness. In *Golden v. Zwickler,* 394 U.S. 103, 110, 89 S.Ct. 956, 960, 22 L.Ed.2d 113 (1969), the Supreme Court stated: "The constitutional question, First Amendment or otherwise, must be presented in the context of a specific live grievance." Here, we have neither a first amendment claim nor a justiciable grievance insofar as plaintiffs and the ABCC are concerned. *Cf. Rodos v. Michaelson,* 527 F.2d 582, 584–85 (1st Cir. 1975) (plaintiffs presented hypothetical case, thus no standing).

B. *The Constitutionality of the Mingling Regulations*

Plaintiffs argue that their mingling, which consists mainly of talk although admittedly commercial in nature, is constitutionally protected speech, citing *Virginia State Bd. of Pharmacy v. Virginia Consumer Council,* 425 U.S. 748, 96 S.Ct. 1817, 48 L.Ed.2d 346 (1976). Their main contention is that, since they purportedly showed an infringement upon protected speech, it was incumbent upon defendants to establish an overriding justification for the infringement, and that the defendants did not do so here. In their reply brief, plaintiffs also maintain that the challenged regulations are overbroad.

· Defendants argue that the mingling regulations are a prophylactic measure to regulate and control the sale of liquor and to prevent illegal conduct associated with such sales.

We consider it curious that nowhere in plaintiffs' argument is there mention of the twenty-first amendment.[7] This amendment is pertinent here, since the district court's opinion is bottomed on the state's authority to regulate the sale of alcoholic beverages. "Consideration of any state law regulating intoxicating beverages must begin with the Twenty-first Amendment . . .." *Seagram & Sons v. Hostetter,* 384 U.S. 35, 41, 86 S.Ct. 1254, 1259, 16 L.Ed.2d 336 (1966).

In *Aristocratic No. 1, supra,* 374 N.E.2d 1181, the Massachusetts Supreme Judicial Court considered the constitutionality of Condition 13, which was challenged on both federal and state grounds. Condition 13 provides: "THIRTEENTH: Entertainment, if any, must be confined to a particular place, and the entertainers must not be allowed to mingle with or circulate among the patrons." The court rejected the licensee's contention that the regulation was vague, holding: "We believe that where an entertainer indiscriminately approaches patrons soliciting them to purchase drinks for him or her, the entertainer has 'mingle[d] with or circulate[d] among the patrons.'" *Id.* at 1185. The court held that, when mingling, the entertainers were not engaged in expressive conduct. It concluded that Condition 13 serves the important governmental interest of preventing the indiscriminate solicitation of drinks. This interpretation of the regulation by the state's highest court is conclusive here. *N.A.A. C.P. v. Button,* 371 U.S. 415, 432, 83 S.Ct. 328, 9 L.Ed.2d 405 (1963); *Smiley v. Kansas,* 196 U.S. 447, 455, 25 S.Ct. 289, 49 L.Ed. 546 (1905).

We do not read the district court's decision, as plaintiffs urge, to be at odds with the *Aristocratic No. 1* decision vis-a-vis the objective of the mingling regulations. The district court correctly followed the state court's interpretation of the goal of the regulations, stating: "The mingling prohi-

---

7. U.S.Const. Amend. XXI, § 2: "The transportation or importation into any State, Territory, or possession of the United States for delivery or use therein of intoxicating liquors, in violation of the laws thereof, is hereby prohibited."

bition is an administrative approach towards regulation of the sale and consumption of alcohol distinct from the bans on solicitation of drinks or solicitation for sexual activities." *Olitsky v. O'Malley, supra,* 453 F.Supp. at 1058.

The scope of authority vested in the states by the twenty-first amendment has yet to be precisely determined.[8] At issue here is how the state's police power, together with the twenty-first amendment, interfaces with plaintiffs' constitutional rights.

We recognize that the Supreme Court has not been unwavering in its consideration of the twenty-first amendment. In *California v. LaRue,* 409 U.S. 109, 93 S.Ct. 390, 34 L.Ed.2d 342 (1972), licensees and dancers questioned the constitutionality of a state regulation which prohibited explicitly sexual live entertainment or films in establishments having a liquor license. In upholding the regulation, Justice Rehnquist focused on the state's authority under the twenty-first amendment to regulate the sale of alcohol, paying scant attention to the petitioners' first and fourteenth amendment claims. The Court noted that the State Department of Alcohol Beverage Control promulgated the regulation after conducting hearings which revealed a link between the licensed establishments and "bacchanalian revelries." The Court held that assessment of the regulation required under the standards of either *Roth v. United States,* 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957), or *United States v. O'Brien,* 391 U.S. 367, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968), was not necessary, since it was established that these were performances that "partake more of gross sexuality than of communication." *LaRue, supra,* 409 U.S. at 118, 93 S.Ct. at 397.

The thrust of the twenty-first amendment was explored:

> While the States, vested as they are with general police power, require no specific grant of authority in the Federal Constitution to legislate with respect to matters traditionally within the scope of the police power, the broad sweep of the Twenty-first Amendment has been recognized as conferring *something more* than the normal state authority over public health, welfare, and morals (emphasis added).

*Id.* at 114, 93 S.Ct. at 395.

The enigmatic "something more" instilled by the twenty-first amendment sufficed in *LaRue* to prohibit the showing of motion pictures and live performances, both activities involving expressive conduct that had hitherto been accorded broad *prima facie* first amendment protection. *See, e. g., Schacht v. United States,* 398 U.S. 58, 90 S.Ct. 1555, 26 L.Ed.2d 44 (1970) (theatrical performance); *Joseph Burstyn, Inc. v. Wilson,* 343 U.S. 495, 72 S.Ct. 777, 96 L.Ed. 1098 (1952) (films). In this case, the mingling regulations restrict commercial conduct, the indiscriminate solicitation of drinks. The Massachusetts regulation, unlike the California regulation upheld in *LaRue,* does not go as far as to regulate the conduct of the plaintiffs when they are performing.

The standard applied in *LaRue* was: given the presumption in favor of the validity of a state regulation within the compass of the twenty-first amendment, were the regulations rational in light of the objectives sought. *Id.,* 409 U.S. at 118–19, 93 S.Ct. 390.[9]

Dicta in *Craig v. Boren,* 429 U.S. 190, 206, 97 S.Ct. 451, 50 L.Ed.2d 397 (1976), written

---

**8.** For a discussion of the Supreme Court's treatment of the twenty-first amendment, *see* Versfelt, *The Effect of the Twenty-First Amendment on State Authority to Control Intoxicating Liquors,* 75 Colum.L.Rev. 1578 (1975); Hart, *Retail Price Maintenance for Liquor: Does the Twenty-First Amendment Preclude a Free Trade Market?,* 5 Hastings Const. L.Q. 507, 510–27 (1978).

**9.** Justice Rehnquist summarized the holding of *California v. LaRue,* 409 U.S. 109, 93 S.Ct. 390,

34 L.Ed.2d 342 (1972), in *Doran v. Salem Inn, Inc.,* 422 U.S. 922, 932–33, 95 S.Ct. 2561, 2568, 45 L.Ed.2d 648 (1975). "In *LaRue,* however, we concluded that the broad powers of the States to regulate the sale of liquor, conferred by the Twenty-First Amendment, outweighed *any* First Amendment interest in nude dancing and that a State could therefore ban such dancing as a part of its liquor license program" (emphasis added).

by Justice Brennan, suggests that *California v. LaRue, supra,* 409 U.S. 109, 93 S.Ct. 390, 34 L.Ed.2d 342 should be limited to situations where there are performances that partake more of gross sexuality than of communication at establishments that serve liquor. The Court carefully reviewed the legislative history and case law relevant to the twenty-first amendment and concluded that it operated primarily to create an exception to the commerce clause. The Court held that the twenty-first amendment did not alter the application of equal protection standards.[10]

The district court here found that there was no showing that either plaintiff engaged in grossly sexual conduct. It concluded that the mingling regulations were aimed at prohibiting the entertainers' commercial conduct which resulted in incidental limitations on their first amendment rights of speech. Accordingly, the district court determined that the standard enunciated in *LaRue, supra,* 409 U.S. at 118, 93 S.Ct. 390, was inapposite. The court, instead, examined the regulations in light of the four part test of *United States v. O'Brien, supra,* 391 U.S. at 377, 88 S.Ct. 1673,[11] and held that the mingling regulations withstood constitutional attack.

Plaintiffs do not contest the district court's conclusion that the mingling regulations satisfy two of the four requirements of *O'Brien, supra,* at 377, 88 S.Ct. 1673: that the Licensing Board has the power to regulate mingling in licensed premises and that the governmental interest is unrelated to the suppression of free expression. Plaintiffs insist, however, that the other two requirements were not met: that the mingling regulations further an important governmental interest and that the restriction is no greater than is essential to further the government's interest.

■ As plaintiffs concede, the activity regulated by the mingling regulations is commercial conduct. Although commercial speech may be entitled to some first amendment protection, *Virginia Pharmacy Bd. v. Virginia Consumer Council, supra,* 425 U.S. 748, 96 S.Ct. 1817, 48 L.Ed.2d 346, the Supreme Court has afforded it "a limited measure of protection, commensurate with its subordinate position in the scale of First Amendment values, while allowing modes of regulation that might be impermissible in the realm of non-commercial expression." *Ohralik v. Ohio State Bar Association,* 436 U.S. 447, 456, 98 S.Ct. 1912, 1918, 56 L.Ed.2d 444 (1978). In *Ohralik,* the Court upheld the disciplinary action of a state bar association taken against an attorney who violated a rule that prohibited solicitation of clients. The Court reasoned that the state had a strong interest in protecting consumers and regulating commercial transactions, especially among members of a licensed profession. *Id.* at 460, 98 S.Ct. 1912.

■ The Court distinguished *Ohralik* from *Virginia Pharmacy, supra,* 425 U.S. at 748, 96 S.Ct. 1817, 48 L.Ed.2d 346, and *Bates v. State Bar of Arizona,* 433 U.S. 350,

---

10. This circuit anticipated a limiting construction of *California v. LaRue, supra,* 409 U.S. 109, 93 S.Ct. 390, 34 L.Ed.2d 342 in *Women's Liberation Union of Rhode Island v. Israel,* 512 F.2d 106 (1st Cir. 1975), cited with approval in *Craig v. Boren,* 429 U.S. 190, 208, 97 S.Ct. 451, 50 L.Ed.2d 397 (1976). We affirmed the district court's finding that a Rhode Island statute which prohibited certain liquor licenses from serving beverages to women violated the equal protection clause of the fourteenth amendment. We rejected the appellants' argument that our construction of the twenty-first amendment was too narrow and we held:

> *LaRue,* while it reiterates the proposition long embraced by the Court that the states have broad powers to regulate the sale of liquor, does not release the states from the requirement that the objective of the regulation be permissible, and that the means selected be rationally related to the end to be achieved.

*Women's Liberation Union, supra,* at 108.

11. The four part test enunciated in *United States v. O'Brien,* 391 U.S. 367, 377, 88 S.Ct. 1673, 1679, 20 L.Ed.2d 672 (1968) is

> a government regulation is sufficiently justified if it is within the constitutional power of the Government; if it furthers an important or substantial governmental interest; if the governmental interest is unrelated to the suppression of free expression; and if the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest.

97 S.Ct. 2691, 53 L.Ed.2d 810 (1977) (both cases pertain to rules prohibiting professionals' use of advertisements), on the basis that "[i]n-person solicitation by a lawyer of remunerative employment is a business transaction in which speech is an essential but subordinate component." *Ohralik, supra,* 436 U.S. at 457, 98 S.Ct. at 1919. The same holds true for the mingling regulations challenged before us. As narrowly interpreted by the Massachusetts Supreme Judicial Court, the regulations prohibit entertainers from indiscriminately approaching customers for the purpose of enticing them to purchase liquor. Miss Olitsky testified, in effect, that her purpose in mingling was to hustle drinks. The regulations as interpreted proscribe only that conversation which leads to the purchase of drinks for the entertainer, obviously a business transaction (at least from the dancer's point of view). As the Court noted in *Ohralik,* the level of appropriate judicial scrutiny is thus lower. *Id.* at 457, 98 S.Ct. 1912.

■ We reject plaintiffs' argument that it was incumbent upon the trial court to delve into the ills sought to be cured by the Licensing Board's prohibition of mingling. Defendants have a substantial interest in regulating the sale and consumption of alcohol based on their police power coupled with the authority granted under the twenty-first amendment. As stated by the Supreme Judicial Court of Massachusetts and reiterated by the district court, the objective of the mingling regulations is to curtail the indiscriminate solicitation of drinks by entertainers. It is not up to the trial court, nor is it our function, to formulate reasons supporting these regulations.[12] The trial court properly framed the inquiry in terms of whether defendants showed that it was rational to assume that mingling contributes to the increased sale and consumption of alcoholic beverages. The record, particularly the testimony of plaintiff Olitsky and some seven Boston Police Officers, supports the trial judge's conclusion that defendants made such a showing.

■ Plaintiffs' argument that the mingling regulations are unconstitutional because there are other, less drastic, alterna-

---

12. Plaintiffs rely on four cases to support their assertion that, absent a showing of sufficient factual justification for a regulation that infringes on protected speech, the regulation must fail. Plaintiffs misconstrue both the nature of the interests involved in these cited cases and their holdings. In *Craig v. Boren,* 429 U.S. 190, 97 S.Ct. 451, 50 L.Ed.2d 397 (1976), plaintiffs showed an infringement of their rights guaranteed by the equal protection clause. In *Erznoznik v. City of Jacksonville,* 422 U.S. 205, 95 S.Ct. 2268, 45 L.Ed.2d 125 (1975), and in *Young v. American Mini Theatres, Inc.,* 427 U.S. 50, 96 S.Ct. 2440, 49 L.Ed.2d 310 (1976), plaintiffs challenged laws which they viewed as imposing censorship on their protected speech. In *California v. LaRue, supra,* 409 U.S. 109, 93 S.Ct. 390, 34 L.Ed.2d 342, plaintiffs established that the statute infringed on their expressive conduct. By contrast, the nature of the interest advanced by the plaintiffs in this case is commercial speech, which is entitled to only minimal protection.

In *Craig v. Boren, supra,* 429 U.S. 190, 97 S.Ct. 451, 50 L.Ed.2d 397, the Supreme Court held that the state scheme prohibiting the sale of 3.2% beer to females under the age of eighteen and males under the age of twenty-one violated the equal protection clause. The statute was found unconstitutional not because there was any failure on the part of the state to come forward with statistics, legislative history, or expert witnesses, but because the many reasons proffered to support the statute failed to justify the gender based discrimination.

In *Erznoznik v. City of Jacksonville, supra,* 422 U.S. 205, 95 S.Ct. 2268, 45 L.Ed.2d 125, an ordinance prohibited drive-in theaters from exhibiting films containing nudity if the screen were visible from the street. Here, too, the state presented a goodly number of justifications for the ordinance, none of them, however, was sufficient to outweigh the censorship imposed by the ban. The Court did note that a last minute argument at oral argument to the effect that the ordinance was aimed at traffic regulation was unsupported by the record. However, this alone was not the reason the Court rejected the argument, rather, the Court considered the contention and decided that it was an invalid purpose since it would be "strikingly underinclusive." *Id.* at 214, 95 S.Ct. 2268.

Likewise, *California v. LaRue, supra,* 409 U.S. 109, 93 S.Ct. 390, 34 L.Ed.2d 342, and *Young v. American Mini Theatres, Inc., supra,* 427 U.S. 50, 96 S.Ct. 2440, 49 L.Ed.2d 310, do not turn on whether or not the state presented a sufficient quantity of facts to justify the challenged regulation, but whether the justification itself was sufficient to outweigh the individual rights involved.

tive means to accomplish the desired legislative goal presumes that the legislative goal was the avoidance of sexual solicitations. This is an incorrect assumption, leading to an unwarranted conclusion. As the Massachusetts Supreme Judicial Court found, the objective of the mingling regulations is to restrict an entertainer's indiscriminate solicitation of drinks from customers. It is aimed at the sale and consumption of liquor, not sex. Not only are these regulations no greater than essential to further the governmental interest, but as the Supreme Judicial Court intimated, the mingling regulations may be the *only* effective method to prohibit an entertainer's indiscriminate solicitation of drinks. *Aristocratic No. 1, supra,* 374 N.E.2d at 1186 n. 6.

Lastly, we reject plaintiffs' overbreadth challenge on two grounds: first, the Massachusetts Supreme Judicial Court has already narrowly construed the mingling regulations in *Aristocratic No. 1, supra,* 374 N.E.2d at 1185, and, second, the United States Supreme Court has just recently determined that an overbreadth analysis does not apply in the commercial context. In *Friedman v. Rogers,* —— U.S. ——, 99 S.Ct. 887, 59 L.Ed.2d 100 (1979), the Court upheld a state act banning the practice of optometry under a trade name. The Court surveyed the limited protection afforded commercial speech stating:

> Because of the special character of commercial speech and the relative novelty of First Amendment protection for such speech, we act with caution in confronting First Amendment challenges to economic legislation that serves legitimate regulatory interests. Our decisions dealing with more traditional First Amendment problems do not extend automatically to this as yet uncharted area. See, *e. g., id.,* at 462 n. 20 [*Ohralik v. Ohio State Bar Ass'n,* 436 U.S. 447, 98 S.Ct. 1912, 56 L.Ed.2d 444 (1978)] (overbreadth analysis not applicable to commercial speech).

*Id.* at —— n. 9, 99 S.Ct. at 894.

We conclude that, given the narrow construction of the word "mingle" by the Massachusetts Supreme Judicial Court, the three mingling regulations are valid and plaintiffs have not shown that their first amendment rights have been violated.

*Affirmed.*