**Michael Alan CROOKER,**
**Plaintiff, Appellant,**

v.

**Thomas MULLIGAN, et al.,**
**Defendants, Appellees.**

No. 85–1811.

United States Court of Appeals,
First Circuit.

Submitted Feb. 6, 1986.

Decided April 16, 1986.

Rehearing and Reconsideration En Banc
Denied July 8, 1986.

---

Michael Alan Crooker, Springfield, Mass., on brief, pro se.

Richard T. Egan, City Sol., Harry P. Carroll, Deputy City Sol., and Edward M. Pikula, Asst. City Sol., Springfield, Mass., on brief, for appellees.

1. The district court dismissed in part and granted summary judgment in part.

2. Crooker has redefined this issue somewhat on appeal, to challenge the seizure of the entire file cabinet. While Crooker noted, in a motion filed after the defendants moved to dismiss, that the officers had seized the file cabinet, he did not pursue this point below and he made no attempt to amend his complaint to include it. Therefore, defendant Meara's affidavit in support of

Before CAMPBELL, Chief Judge, COFFIN and BOWNES, Circuit Judges.

PER CURIAM.

In his appeal of the district court's dismissal[1] of his 42 U.S.C. § 1983 action, Crooker, proceeding *pro se*, argues: (1) the district court was in error to conclude that Higgins, a Massachusetts State Trooper sued in his official capacity, was immune from suit under the Eleventh Amendment; (2) the district court was wrong to conclude that a search and seizure executed by the defendants was reasonable; and (3) the district court should not have granted summary judgment on the issue of whether defendants were protected by good faith immunity against alleged interference with Crooker's right of access to the courts. We consider each argument in turn.

1. *Immunity of Higgins, a Massachusetts State Trooper.*

We do not find it necessary to discuss at length Crooker's contention that the complaint against Higgins should not have been dismissed on grounds of sovereign immunity. We conclude, *infra*, that Crooker has failed to state any constitutional violation because the defendants' actions are protected by good faith immunity. Therefore, we affirm the district court's dismissal against Higgins on that basis.

2. *Reasonableness of the Search*

Crooker insists that the officers' seizure of his legal files, papers, and law books was unreasonable.[2] He alleges that the search warrant did not authorize the seizure of his legal material; that he was deprived of legal papers, files and law

the motion to dismiss relates only to the seizure of the legal files. Similarly, the district court's opinion discusses only the reasonableness of the files' seizure. We conclude that the issue of the reasonableness of the file cabinet's seizure was not properly presented to the district court, and thus we express no opinion on it. *See Johnston v. Holiday Inns, Inc.,* 595 F.2d 890, 894 (1st Cir.1979).

books, in derogation of his right of access to the courts (*see* point 3, *infra* ); and that his files were not promptly returned to him. Crooker did not properly challenge the validity of the warrant itself, and we reject the argument that the district court should have been "on notice," due to Crooker's various pending cases, that Crooker thought the warrant objectionable.[3] Thus, we address only whether the seizure of the legal files, papers, and law books was reasonable.

> The warrant authorized a search for firearms, rifles, shotguns, dangerous weapons, explosive devices or chemical substances or components or information necessary to the production of such devices, false, fraudulent or stolen means of identification, false, fraudulent or stolen checks, false, fraudulent or stolen credit cards, or any items, papers or effects that are pertinent to, give evidence of or exhibit information relating to the above.

The warrant authorized a search of Crooker's first floor apartment as well as a search of a "two drawer metal file cabinet in the bedroom next to the bed."

Crooker's argument against the seizure's reasonableness rests almost exclusively on *United States v. Tamura*, 694 F.2d 591 (9th Cir.1982). *Tamura* was a direct appeal of a criminal conviction; agents had a warrant to seize three categories of records from a business place: the warrant was specific as to the records to be seized. When the employees refused to help the agents, the agents seized all accounting records for the years in question—eleven boxes, thirty-four file drawers and seventeen drawers of cancelled checks. In re-

fusing to reverse Tamura's conviction, the court noted as follows:

> It is true that all items in a set of files may be inspected during a search, provided that sufficiently specific guidelines for identifying the documents sought are provided in the search warrant and are followed by the officers conducting the search.... However, the wholesale *seizure* for later detailed examination of records not described in a warrant is significantly more intrusive, and has been characterized as the kind of "investigatory dragnet that the fourth amendment was designed to prevent."

*Tamura*, 694 F.2d at 595, *quoting United States v. Abrams*, 615 F.2d 541, 543 (1st Cir.1980).[4]

Crooker would equate the seizure of his legal papers and files to the wholesale seizure which occurred in *Tamura*. There is a significant difference, however. The uncontradicted affidavit of one of the seizing officers, Officer Meara, indicated that documents within the scope of the warrant were found among the legal papers. A picture of the open file cabinet reveals a section of the cabinet denominated "Legal Research/Cases, Etc." which is followed by a series of files marked with case names and docket numbers. In his affidavit in support of the motion to dismiss, Officer Meara explained that when he opened the file cabinet, he saw a section marked "legal papers" which included, among other things, "paper work and documents which related to ... the subject of the search warrant ... [and] [a]dditional evidence of other attempted fraud and other criminal activity...."

---

**3.** Crooker argues on appeal, for the first time, that the police initially gained access to his house by subterfuge, prior to obtaining a warrant. He contends the district court should have realized, based on his other pending lawsuits, that the lawfulness of the means used to obtain enough information to support the issuance of a warrant was in issue. Since Crooker chose to present his grievances seriatim, spreading them out in separate actions, it was not unreasonable for the district court to deal with them one at a time. Especially in the case

of a prolific litigant, like Crooker, it cannot reasonably be expected that each complaint somehow incorporates by reference all the other complaints.

**4.** *Abrams* was a challenge to a search warrant. The court concluded that the warrant failed to meet the requirement of particularity because the officers' discretion was unfettered, there was no limitation as to time and no description as to which records were to be seized.

Thus, unlike the wholesale seizure challenged in *Tamura*, Crooker is complaining about the officers' seizure of a "section" of the documents in the cabinet, a section which contained relevant documents intermingled with other documents.

We have found a number of cases upholding the seizure of documents, both incriminating and innocuous, which are not specified in a warrant but are intermingled, in a single unit, with relevant documents. *See, e.g., United States v. Slocum*, 708 F.2d 587, 605–06 (11th Cir.1983) (seizure of folder containing both innocent material and incriminating material upheld); *United States v. Christine*, 687 F.2d 749, 760 (3d Cir.1982); *United States v. Wuagneux*, 683 F.2d 1343, 1353 (11th Cir.1982), *cert. denied*, 464 U.S. 814, 104 S.Ct. 69, 78 L.Ed.2d 83 (1983); *United States v. Beusch*, 596 F.2d 871, 877 (9th Cir.1979). We are not inclined to decide whether the section of the file cabinet at issue here is itself a single unit or is sufficiently analogous to a single unit so as to apply the above stated rule.

Rather, we decide that the doctrine of good faith immunity applies to shield the officers from liability for damages for the seizure of Crooker's legal material. *Cf. Malley v. Briggs*, —— U.S. ——, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986) (qualified immunity is accorded officer whose request for warrant allegedly caused an unconstitutional arrest; standard is the same for search warrants. *Id.* —— U.S. at ——, 106 S.Ct. at 1098–1100); *BCR Transport Co., Inc. v. Fontaine*, 727 F.2d 7, 10 (1st Cir. 1984) (even if defendant officer lacked probable cause for obtaining and executing search and arrest warrants, he can still avoid § 1983 liability if he can demonstrate his good faith in securing and executing warrants).

In *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), the Supreme Court indicated that the test for qualified immunity is the "objective reasonableness" of the actor's conduct, measured by reference to clearly established law. *Id., Harlow*, 457 U.S. at 818, 102 S.Ct. at 2738; *see Floyd v. Farrell*, 765 F.2d 1, 4–5

(1st Cir.1985). "If a plaintiff proves some peculiar or unusual source, specially known to the defendant, then, by hypothesis, this is what the defendant, as a reasonable man, must take into account." *Krohn v. United States*, 742 F.2d 24, 31 (1st Cir. 1984).

In the case at bar, the officers had a search warrant authorizing them to search the file cabinet, as well as the apartment, for various enumerated items. Their investigation of the file cabinet revealed relevant material, specified in the warrant, within a section of legal files and materials. Under these circumstances, and given the concededly uncertain state of the law as to what exactly may be seized when innocuous material is intermixed with relevant material, we conclude that the officers' actions were objectively reasonable and that the doctrine of good faith immunity protects them from liability for damages.

As to Crooker's contention that the defendants did not promptly return his files to him, we do not think this renders the search unreasonable, and we can discern no independent constitutional violation.

### 3. *Right of Access/Qualified Immunity*

■ Crooker insists that the issue of the defendants' qualified immunity for the alleged violation of his right of access to the courts was a jury question and should not have been decided by summary judgment. He argues additionally that the officers were not entitled to immunity. He claims his right of access was violated when the defendants retained his legal files, and he argues that the defendants knew or should have known—that they were "put on notice by correspondence, this lawsuit, and hearings in a state court"—that their continued retention of the files would interfere with his access to the courts. Crooker maintains that one of his actions was dismissed because he could not respond to discovery requests and that other pending cases are "in jeopardy." The files have since been returned.

In *Harlow v. Fitzgerald*, the court indicated a preference for summary judgment resolution of qualified immunity issues.

Hence, Crooker's first argument lacks merit. We proceed to apply the facts of this case to the good faith immunity standards set out above.

In civil rights/habeas corpus actions, the "right of access" generally refers to the right of prisoners to be provided with adequate legal tools or expertise. *See Bounds v. Smith*, 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977); *Johnson v. Avery*, 393 U.S. 483, 89 S.Ct. 747, 21 L.Ed.2d 718 (1969). The right has been applied, in a slightly different context, to reach actions taken against prisoners in retaliation for litigation. *See, e.g., Hall v. Sutton*, 755 F.2d 786, 787 (11th Cir.1985); *McDonald v. Hall*, 610 F.2d 16, 18 (1st Cir.1979).

We are not convinced that the action Crooker complains of—retention of his legal files—violates his right of access to the courts. The right of access is not infinitely elastic, and even if we were to accept its application in this context, we are unwilling to charge these officers with such prescience. Accordingly, we do not accept the proposition that the officers knew or should have known that their retention of Crooker's legal files violated this right.

Having concluded that the district court's disposition of this case was correct, we affirm its decision.