**Jose A. MARTINEZ–VELEZ,
Plaintiff, Appellant,**

v.

**Jose A. SIMONET, et al.,
Defendants, Appellees.**

No. 90–1424.

United States Court of Appeals,
First Circuit.

Heard Oct. 5, 1990.

Decided Nov. 28, 1990.

Victor E. Báez, with whom José A. Gallart, was on brief, for plaintiff, appellant.

Fernando Luis De Jesús–Martinez, with whom Oscar González–Badillo, Jorge R. Dávila, González–Badillo and Dávila, were on brief, for defendants, appellees.

Before TORRUELLA, Circuit Judge, TIMBERS,* Senior Circuit Judge, and CYR, Circuit Judge.

TORRUELLA, Circuit Judge.

Plaintiff-appellant José A. Martinez–Vélez brought suit in the United States District Court for the District of Puerto Rico, 726 F.Supp. 891 against the individual members of the Puerto Rico veterinary licensing board, José A. Simonet, Herbert R. Gómez, José D. Rivera–Anaya, and Walter R. Colón–Lilley, under 42 U.S.C. § 1983 for wrongfully depriving him of a veterinary license without due process of law.[1] In the proceedings below, defendants-appellees sought and were granted summary judgment. Appellant now appeals that ruling along with the district court's denial of appellant's Fed.R.Civ.P. 59(e) motion to vacate judgment. We affirm the judgment below but base our holding on reasons other than those relied upon by the district court.

## FACTS

All parties are in agreement regarding the facts of this case. In 1985, after receiving a degree in veterinary medicine from the Tuskegee Institute in Alabama, appellant applied to take the local veterinary license examination in Puerto Rico. While awaiting the examination date, appellant applied for and was granted a provisional license. The terms of the provisional license required appellant to work under the supervision of a licensed veterinarian. The veterinarian named by appellant in his application was Dr. José A. Díaz–Umpierre. Instead of working for Dr. Díaz–Umpierre, however, appellant accepted a part-time position with Dr. Carlos Muratti, also a li-

censed veterinarian. Appellant did not notify the licensing board of this change.

On August 5–7, 1985, appellant took the license examination as planned. Prior to the release of his scores, however, he became the subject of an ethical investigation by the veterinary licensing board. Inquiry arose when a local veterinarian, Dr. Miguel A. Borri–Díaz, submitted to the licensing board a sworn statement alleging that appellant was reportedly violating the terms of his provisional license by practicing under a veterinarian not named in his application and illegally practicing veterinary medicine by being on call without the supervision of a licensed veterinarian. Pending resolution of these charges, the licensing board decided not to release appellant's examination scores. The licensing board did not, however, revoke appellant's provisional license. Appellant was permitted to continue practicing veterinary medicine under his provisional license until the ethical charges against him were resolved.

An administrative hearing was originally scheduled for October 24, 1985, but was postponed twice at appellant's attorney's request. On February 20, 1986, a hearing was finally held, and appellant was unofficially told that he had received a passing score on his examination. The hearing officer in charge found in favor of appellant and recommended to the licensing board that all charges against appellant be dropped. In accordance with the hearing officer's recommendation, the licensing board officially released appellant's examination scores and issued appellant a permanent veterinary license on June 12, 1986. In addition, the licensing board excused appellant from complying with the statutory requirement of one year of public service ordinarily required of all new veterinarians.

## STANDARD OF REVIEW

Summary judgment is appropriate only if there is no genuine dispute of material fact

---

* Of the Second Circuit, sitting by designation.

1. Suit against the veterinary licensing board as an entity was voluntarily dismissed by appel-

lant, and suit against a fifth defendant, Aníbal González–Turull, was dismissed by the court for lack of prosecution.

and the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The court must review the record, together with all reasonable inferences therefrom, in the light most favorable to the non-moving party. *Johnson v. Educational Testing Service*, 754 F.2d 20, 25 (1st Cir.), *cert. denied*, 472 U.S. 1029, 105 S.Ct. 3504, 87 L.Ed.2d 635 (1985).

## DISCUSSION

■ In order to establish a § 1983 violation, the complaining party must prove (1) that "the conduct complained of was committed by a person acting under color of state law" and (2) that the conduct deprived the complaining party "of rights, privileges or immunities secured by the Constitution or laws of the United States." *Parrat v. Taylor*, 451 U.S. 527, 535, 101 S.Ct. 1908, 1913, 68 L.Ed.2d 420 (1981); 42 U.S.C. § 1983. The parties do not dispute the district court's finding that the licensing board acted under color of state law in this case. The contested issue is whether the second element of *Parrat* has been satisfied. Appellant argues that it has. The district court agreed with appellees that it has not. We reach the same conclusion as the district court but for different reasons.

### Was Appellant Deprived of a Property Right?

It is generally recognized that state law can endow an individual with a property interest. *Board of Regents of State Colleges, et al. v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). "To have a property interest in a [state] benefit," however, one "must have more than an abstract need or desire for it. [One] must have more than a unilateral expectation of it. [One] must, instead, have a legitimate claim of entitlement to it." *Id.*

Appellant contends that veterinary license applicants become entitled to their licenses when they receive passing scores on the license examination and that the licensing board cannot withhold an applicant's score or license even though an ethical investigation is pending. Appellant claims that the proper procedure is for the licensing board to issue the license and then later revoke it if the investigation is resolved against the applicant. Therefore, appellant argues, the licensing board wrongfully withheld his examination scores. Furthermore, by doing so, the licensing board deprived him of a property interest, his license, without due process of law in violation of 42 U.S.C. § 1983.

The district court found that the one year of public service required of all new veterinarians by Puerto Rico law is a prerequisite for entitlement to a permanent veterinary license. Since appellant had not yet performed one year of public service, the district court held that he could not have gained a property interest in his license. Appellant correctly notes on appeal, however, that a veterinary license applicant cannot even be considered for public service until after he or she has been determined to have passed the license examination. Puerto Rico law states:

Every person who wishes to obtain a permanent license in any health-related profession in Puerto Rico shall serve for a period of one (1) year in the public service, *after* having fulfilled the requirements established by the respective acts that regulate each profession.

20 L.P.R.A. § 71 (emphasis added). Withholding of appellant's scores by the licensing board precluded appellant from consideration for public service by the Secretary of Health, and consequently, appellant argues, from issuance of a license. Appellant is correct, but only up to a point.

■ The Puerto Rico statute clearly states that the applicant's examination scores shall be issued within 60 days of the close of the examination. 20 L.P.R.A. § 2959(b). However, even assuming that failure to do so under ordinary circumstances might constitute a deprivation of the applicant's rights in obtaining a license to which the applicant has otherwise become entitled, this case is not one involving ordinary circumstances. In this case the

applicant, appellant, was the subject of a legitimate ethical investigation by the licensing board. There is an additional provision under Puerto Rico law which requires a veterinary license applicant to pass ethical scrutiny before a license will be issued to that applicant.[2] *Id.* at § 2958(b). The licensing board was thereby justified in withholding issuance of appellant's veterinary license until the investigation was resolved.[3] The fact that appellant was deprived of his examination scores in the interim in no way affected whether appellant would ultimately receive a license. In fact, appellant was unofficially issued his scores at the commencement of the administrative hearing and was issued a license within a reasonable time after it was determined that the charges against him should be dropped.

 The administrative proceeding itself provided appellant with sufficient due process.[4] The charges against appellant were well-founded. Appellant was in fact practicing under a veterinarian not named in his provisional license application. That fact alone created sufficient ground for an ethical inquiry regardless of whether the charge of being on unsupervised call was unfounded, as claimed by appellant. In addition, the original hearing was scheduled for October 24, 1985, just 24 days after examination scores were released to the other applicants.[5] The fact that a hearing did not actually take place until February 20, 1986, cannot in any way be attributed to appellees' conduct. Both postponements were at the request of appellant.

Moreover, during the entire process appellant was represented by able counsel, evidenced most notably by the fact that appellant ultimately prevailed, receiving his veterinary license as well as a waiver of the one year public service requirement.

In fact, we do not see that appellant has suffered any injury as a result of the licensing board's decision to withhold his scores. Had appellant been issued his examination scores in October 1985 and not been exempted from the one year public service requirement at that time, appellant would not have been free to practice veterinary medicine privately until October 1986. Although appellant was forced to wait seven months longer than the other applicants before being considered for public service, the fact that his public service requirement was waived actually allowed him to practice private veterinary medicine earlier than he might have otherwise. Moreover, during the ethical investigation, appellant was allowed to continue practicing veterinary medicine under his provisional license. Therefore, at no time was he deprived of his livelihood or the right to practice his chosen profession.

For the reasons stated above, the district court judgment granting summary judgment to appellees is

*Affirmed.*

*Double costs to appellees.*

---

**2.** "If the Board determines that the applicant has the proper qualifications and has *good moral repute* in the community, [that person] shall be admitted to take the revalidation examination...." 20 L.P.R.A. § 2958(b) (emphasis added). Appellant in the instant case was able to take the license examination before the ethical investigation against him was resolved because questions regarding his ethical fitness did not arise until after he had taken the examination.

**3.** Puerto Rico law provides that
The Board has the power and duty to:
(a) examine and evaluate the moral and academic qualifications of each revalidation examination applicant, leading to obtaining a license to practice veterinary medicine in Puerto Rico ...

(b) issue, renew, deny, suspend or revoke permanent or provisional licenses for the practice of veterinary medicine in Puerto Rico, and also take disciplinary actions with regard to the license holders, which are in accordance with this chapter and the regulations promulgated hereunder.
20 L.P.R.A. § 2956.

**4.** Due process requires notice and an opportunity to be heard. *Goldberg v. Kelly*, 397 U.S. 254, 267–68, 90 S.Ct. 1011, 1020–21, 25 L.Ed.2d 287 (1970).

**5.** Examination scores were officially released October 1, 1985.