**Michael A. GUGLIELMO, pro se,**

**v.**

**Michael CUNNINGHAM, Warden, New Hampshire State Prison; Gerald Mills, Investigator, New Hampshire State Prison.**

**Civ. No. 92–347–SD.**

United States District Court,
D. New Hampshire.

Jan. 28, 1993.

---

Michael A. Guglielmo, pro se.

### ORDER

DEVINE, Senior District Judge.

Pro se plaintiff Michael Guglielmo, an inmate at Connecticut Correctional Institution (CCI) in Somers, Connecticut, formerly an inmate at the New Hampshire State Prison (NHSP), filed a 42 U.S.C. § 1983 [1] complaint against defendants Michael Cunningham, warden of NHSP, and Gerald Mills, NHSP investigator, in their individual capacities on July 9, 1992. Plaintiff's main contention is that the retention of various documents in his offender record violates his civil rights under the First and Fourteenth Amendments of the United States Constitution. Plaintiff has requested various forms of relief. *See* text *infra* at 35.

The magistrate judge concluded that Guglielmo failed to plead any facts to show that he had suffered any harm,[2] and granted him thirty days in which to amend his complaint or face dismissal of same. *See* Sept. 21, 1992, Order at ¶ 1.

In light of the fact that plaintiff's objection to the magistrate judge's order contains allegations of certain injuries, the court deems the complaint amended, and conducts a de novo review under 28 U.S.C. § 636(b)(1)(C).

---

**1.** In relevant part, 42 U.S.C. § 1983 provides:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

**2.** The magistrate judge found implicitly that Guglielmo's claim was not frivolous under 28 U.S.C. § 1915(d) and *Neitzke v. Williams,* 490 U.S. 319, 327, 109 S.Ct. 1827, 1832, 104 L.Ed.2d 338 (1989), but that the nature and extent of injury alleged were insufficient to make out an actionable constitutional violation. Therefore, he allowed Guglielmo the procedural protection required, that of amending his complaint "before any dismissal on the merits is imposed." *Street v. Fair,* 918 F.2d 269, 273 (1st Cir.1990).

*Facts*

■ Plaintiff's pro se complaint, which the court must construe liberally, *McDonald v. Hall*, 610 F.2d 16, 17 (1st Cir. 1979) (citing *Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976)), relates the following series of events. In a December 18, 1989, intra-department memorandum, defendant Mills recommended that Guglielmo be transferred from NHSP to an out-of-state prison. The warden approved the memo that same day. Exhibit J.[3] Guglielmo was apparently transferred to CCI shortly thereafter. Objection to Magistrate's Order at ¶ 3. While incarcerated at CCI, and prior to the filing of this complaint, Guglielmo filed a separate civil rights action in this court (Civ. No. 91–142–L) on April 5, 1991, against Cunningham and other staff members at NHSP related to his 1989 incarceration. Complaint at ¶ 10. Furthermore, the record reveals that plaintiff has filed actions against prison officials since at least 1988.

During the discovery process in Civil Action No. 91–142–L, plaintiff was provided a copy of his offender record. *Id.* at ¶ 11. The record contained copies of eight documents related to pro se legal action plaintiff had filed against Cunningham and other staff members of NHSP prior to and after his transfer to CCI. *Id.* at ¶¶ 11, 12.

Plaintiff alleges that his offender record also contained a disciplinary report (DR) of December 19, 1989, which described an inventory search of plaintiff's cell at NHSP conducted on December 17, 1989. During this search, prison guards confiscated a folder containing another inmate's legal materials, a law book with another inmate's name, a list of inmates' names and type of legal work to be done, three unauthorized pornographic magazines, two pieces of another inmate's United States mail, an altered power cord, one yellow marker with a needle-type object embedded in the tip, and other altered contraband. Exhibit I–1.

Plaintiff also alleges that his offender record contains an intra-department memorandum transfer request written by defendant Mills and approved by defendant Warden Cunningham on December 18, 1989. In the memorandum Mills states that, based on "intelligence information from reliable inmate sources," plaintiff was an alleged leader in an October 1989 uprising, and the alleged leader in a work stoppage planned for December 1989. Complaint at ¶ 14, Exhibit J.

After reviewing these materials obtained through discovery in his other civil action, Guglielmo wrote several letters to Attorney William McCallum, counsel for the prison, asking him to advise Cunningham to expunge these materials from his offender record. Complaint at ¶ 20. After receiving no response from Attorney McCallum, Guglielmo wrote to Cunningham three times, asking that he expunge the documents at issue from his offender record. *Id.* at ¶¶ 21, 22, 24. Cunningham responded that the DR in question was not in Guglielmo's offender record, and that he would not remove the other materials at issue from said record. *Id.* at ¶¶ 23, 25.

*The Allegations*

Guglielmo sets forth three causes of action against the defendants and requests various forms of relief, all of which center around the aforementioned documents placed in his prison record while he was incarcerated at NHSP.

In his first cause of action, Guglielmo contends that the retention of documents relating to his pro se legal actions against NHSP and its various staff members violates his First Amendment rights to expression and to bring grievances to the government (construed by the court as access to the courts), and serves no purpose but that of labelling him as a jailhouse lawyer. He further argues that these materials could

---

**3.** Rule 10(c), Fed.R.Civ.P., authorizes the incorporation of exhibits or writings attached to a pleading and makes them an integral part of the pleading for all purposes. A pleading includes any document attached to it as an exhibit or incorporated by reference. *J & B Schoenfeld*

*Fur Merchants, Inc. v. Kilbourne & Donohue, Inc.*, 704 F.Supp. 466, 469 (S.D.N.Y.1989) (citing *Goldman v. Belden*, 754 F.2d 1059, 1065–66 (2nd Cir.1985)); 5 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure: Civil 2d* § 1327 at 761 (1990).

be relied on by future prison officials when making decisions regarding prison classifications, post-conviction hearings, and other out-of-state involuntary transfers, in violation of his rights under the First and Fourteenth Amendments of the federal Constitution.

Plaintiff's second cause of action is based upon his claim that he was never afforded the opportunity to defend himself against allegedly false allegations provided by a confidential informant which were contained in the aforementioned memorandum. He alleges that this memo was the impetus for his transfer to an out-of-state prison and deprivation of personal property, in violation of procedural due process under the Fourteenth Amendment.

Plaintiff's third cause of action is based upon his contention that he was denied the opportunity to defend himself before a prison disciplinary board against allegations in a particular disciplinary report. He claims that this failure to provide him with minimal due process is also a violation of the Fourteenth Amendment.

Plaintiff has requested under section 1983 that the court grant him declaratory relief and expunge said documents from his offender record. Alternatively, he has requested that the court exercise its equitable power to expunge the documents at issue. He also seeks damages under section 1983.

### Discussion

As plaintiff was placed on notice of the inadequacy of his complaint and has had an opportunity to amend, *Street, supra*, 918 F.2d at 272, the court now reviews Guglielmo's amended complaint under the familiar standard of Rule 12(b)(6), Fed.R.Civ.P. Accordingly, the court "take[s] as true all its factbound allegations and draw[s] every reasonable inference in favor of the pleader." *Rodi v. Ventetuolo*, 941 F.2d 22, 23 (1st Cir.1991) (citing *Dartmouth Review v. Dartmouth College*, 889 F.2d 13, 16 (1st Cir.1989)).

"Though the threshold for [Guglielmo's] stating a claim is low, it is not nonexistent." *Dartmouth, supra* at 16. Thus,

the court need not credit "[g]auzy generalities, unsupported conclusions, subjective characterizations and problematic suppositions." *Id.* The First Circuit has "insisted on at least the allegation of a minimal factual setting. It is not enough to allege a general scenario which could be dominated by unpleaded facts...." *Dewey v. University of N.H.*, 694 F.2d 1, 3 (1st Cir.1982), *cert. denied*, 461 U.S. 944, 103 S.Ct. 2121, 77 L.Ed.2d 1301 (1983).

■ In civil rights cases, there is the need to balance the liberal construction given the Federal Rules of Civil Procedure against the potential abuses and needless harassment of defendants. *Dartmouth, supra*, 889 F.2d at 16. Thus, "the claim must at least set forth minimal facts, not subjective characterizations, as to who did what to whom and why." *Dewey, supra*, 694 F.2d at 3.

In claiming a violation of his civil rights under 42 U.S.C. § 1983, a plaintiff must allege that (1) "the conduct complained of was committed by a person 'under color of state law' and (2) that the conduct deprived the complaining party 'of rights, privileges or immunities secured by the Constitution or laws of the United States.'" *Martinez–Velez v. Simonet*, 919 F.2d 808, 810 (1st Cir.1990) (quoting *Parratt v. Taylor*, 451 U.S. 527, 535, 101 S.Ct. 1908, 1912, 68 L.Ed.2d 420 (1981)). Here, plaintiff satisfies the first element under *Parratt*, since he alleges that the defendants committed these violations as prison officials of the New Hampshire state penal system. Thus, the court must determine whether the prison officials' conduct deprived Guglielmo of recognized constitutional rights, as he alleges.

### 1. First Cause of Action

■ Plaintiff contends that the retention in his offender record of documents from his other pro se actions against NHSP officials violates his First Amendment rights to freedom of expression and access to the courts, and may result in his being labeled a jailhouse lawyer. Plaintiff further alleges that these pro se materials will likely be

relied upon by future prison tribunals to base prison classifications, post-conviction hearings, and out-of-state involuntary transfers, in violation of the First and Fourteenth Amendments to the Constitution.

While the right to litigate to redress civil wrongs has been treated as a First Amendment right, *Hall v. Ochs*, 817 F.2d 920, 925 (1st Cir.1987), the court finds it impossible to conclude that plaintiff's freedom of expression to litigate has been limited by the materials in his offender record pertaining to past pro se litigation. To the contrary, he fails to allege any facts that would support such a proposition. Broad unsupported conclusions fail to carry the day. The reality revealed by the record is that plaintiff continues to fully litigate at least two civil rights cases from CCI.

Likewise, it is "undisputed that inmates have a fundamental constitutional right of access to the courts." *Carter v. Fair*, 786 F.2d 433, 435 (1st Cir.1986) (citations omitted). This court long ago recognized that this right "imposes two separate types of duties upon prison officials: first, they may not abridge, impair or burden the exercise of the right," *Laaman v. Perrin*, 435 F.Supp. 319, 326 (D.N.H.1977) (citations omitted), and, "second, they must 'shoulder affirmative obligations to assure all prisoners meaningful access to the courts,' " *id.* (quoting *Bounds v. Smith*, 430 U.S. 817, 824, 97 S.Ct. 1491, 1496, 52 L.Ed.2d 72 (1977)). *Accord Carter, supra*, 786 F.2d at 435.

Beyond the facts relevant to his retaliatory transfer claim and the alleged punitive reactions of prison officials therein, *see* text *infra* at 36–37, plaintiff fails to allege any facts to indicate that New Hampshire prison officials have otherwise impaired or burdened his ability to exercise his right of access to the courts or his "meaningful" access to same. In fact, the record supports the opposite view, as plaintiff continues to litigate this complaint, as well as his other civil action, in this court, from his new out-of-state prison residence, in spite of whatever pro se litigation materials may be contained in his offender record. *See generally Crooker v. Mulligan*, 788 F.2d 809, 813 (1st Cir.1986) (court not convinced that police retention of plaintiff's legal files violated his right of access to the courts).

■ In addition, a reputation as a jailhouse lawyer is not recognized as deprivation of a liberty interest protected by the Fourteenth Amendment.[4] "The Supreme Court has clearly held that the interest in a good name or good reputation does not trigger the Due Process Clause, in spite of the fact that branding someone a criminal (or a terrorist) ... entails substantial disadvantages." *Reyes v. Supervisor of DEA*, 834 F.2d 1093, 1098 (1st Cir.1987) (citing *Paul v. Davis*, 424 U.S. 693, 711–12, 96 S.Ct. 1155, 1165–66, 47 L.Ed.2d 405 (1976)). Therefore, plaintiff cannot claim that even a present label of "jailhouse lawyer" has violated any liberty interest.

As to the aforementioned issues, the court is constrained to say that, despite plaintiff's attempt to amend his complaint, he still fails to plead any facts which establish that recognized constitutional rights have been violated.[5]

■ However, after generously reviewing plaintiff's complaint, the court finds that, like the plaintiff in *McDonald, supra*, 610 F.2d at 18, Guglielmo alleges that he filed actions against the prison officials, was subsequently transferred, and his transfer was in retaliation for being a jailhouse lawyer litigating against NHSP. Thus, plaintiff has averred a chronology of events in his complaint which could arguably be read as providing some support for

---

**4.** Plaintiff appears to argue that gaining a reputation as a jailhouse lawyer implicates both the First and Fourteenth Amendments. Nevertheless, the court's research reveals that a reputation as a jailhouse lawyer is consistently equated to a claim of denial of access to the courts. *See Carter, supra*, 786 F.2d at 435.

**5.** Accordingly, the additional analysis under *Turner v. Safley*, 482 U.S. 78, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987), urged by plaintiff is unnecessary.

an inference of retaliation.[6] *Id.* Accordingly, the court finds that plaintiff's complaint does state a claim "that defendants denied [Guglielmo] his 'fundamental right of access to the courts.'" *Jackson v. Fair,* 846 F.2d 811, 820 (1st Cir.1988) (*quoting McDonald, supra,* 610 F.2d at 18). While plaintiff has no liberty interest under either the Due Process Clause or state law in serving his time at NHSP, *see* text *infra* at 37–38, his "right of access to the courts clearly encompasses the right to seek judicial resolution of grievances without punitive reactions on the part of prison officials." *Laaman, supra,* 435 F.Supp. at 326.

However, like the *McDonald* court, this court's ruling is not meant to express an opinion on the merits of the retaliatory transfer claim. Plaintiff's hurdle will be high because he "has the 'substantial burden' of proving that he would not have been transferred "but for" the alleged reason,'" *Jackson, supra,* 846 F.2d at 820 (quoting *McDonald, supra,* 610 F.2d at 18), and because of "the wide latitude afforded prison officials in ordering transfers," *id.; McDonald* at 18–19.

### 2. Second Cause of Action

■ This Fourteenth Amendment due process claim focuses upon the memorandum at issue. Specifically, plaintiff contends that his transfer to an out-of-state prison was a violation of the Due Process Clause of the Fourteenth Amendment because he was denied a hearing to defend himself against allegedly false allegations contained in the transfer recommendation memo, and was denied an independent determination of the reliability of the confidential informant who provided the information for said memo. However, for these alleged deprivations to be actionable, they must violate a liberty interest.

■ Under the Fourteenth Amendment of the federal Constitution, the court must look to two sources from which liberty interests may arise—the Due Process Clause itself and the laws of the states. *Hewitt v. Helms,* 459 U.S. 460, 466, 103 S.Ct. 864, 868, 74 L.Ed.2d 675 (1983).

Under the Due Process Clause, the United States Supreme Court has held that

> no Due Process Clause liberty interest of a duly convicted prison inmate is infringed when he is transferred from one prison to another within the state, whether with or without a hearing, absent some right or justifiable expectation rooted in state law that he will not be transferred except for misbehavior or upon the occurrence of other specified events.

*Montanye v. Haymes,* 427 U.S. 236, 242, 96 S.Ct. 2543, 2547, 49 L.Ed.2d 466 (1976) (citing *Meachum v. Fano,* 427 U.S. 215, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976)). *Accord Goodnow v. Perrin,* 120 N.H. 669, 671, 421 A.2d 1008, 1010 (1980) (citing *Montanye, supra,* 427 U.S. at 242, 96 S.Ct. at 2547).

"The Clause does not require hearings in connection with transfers whether or not they are the result of the inmate's misbehavior or may be labeled as disciplinary or punitive." *Montanye, supra,* 427 U.S. at 242, 96 S.Ct. at 2547. This reasoning also applies to interstate prison transfers. *Olim v. Wakinekona,* 461 U.S. 238, 245, 103 S.Ct. 1741, 1745, 75 L.Ed.2d 813 (1983); *Goodnow, supra,* 120 N.H. at 671, 421 A.2d at 1010. Thus, plaintiff's transfer is not a violation of the Due Process Clause in and of itself. Accordingly, it remains to be determined whether plaintiff has a right or justifiable expectation rooted in state law that he not be transferred.

■ "[A] State creates a protected liberty interest by placing substantive limitations on official discretion," *Olim, supra,* 461 U.S. at 249, 103 S.Ct. at 1747, and that determination is made by "closely [examining] the language of the relevant statutes and regulations." *Kentucky Dep't of Corrections v. Thompson,* 490 U.S. 454, 461,

---

6. The complaint itemizes past litigation and the December 17, 1989, confiscation of plaintiff's legal work for himself and others and the resultant disciplinary report. On December 18, 1989, an intra-department memo was written recommending his transfer, albeit for his suspected leadership role in both an impending disturbance and a past work stoppage. The warden approved the transfer the same day. Exhibits I and J.

109 S.Ct. 1904, 1909, 104 L.Ed.2d 506 (1989).

New Hampshire Revised Statutes Annotated (RSA) 21–H:12 II (1988) provides broad discretionary power to the commissioner to transfer an inmate "whenever ... [he] determines that an inmate cannot be properly or safely kept [where] ... he is confined or that such transfer is in the best public interest or furthers legitimate penological objectives." Thus, New Hampshire law does not condition transfers between prisons upon the occurrence of a specified event. *Hartman v. Cunningham,* No. 89–420–D, slip op. at 3 (D.N.H. Nov. 16, 1990). *Cf. Stokes v. Fair,* 795 F.2d 235 (1st Cir. 1986) (regulations which permitted prison officials to place inmate in particular status only upon occurrence of certain conditions created constitutionally protected liberty interest). Furthermore, under the New England Interstate Corrections Compact, RSA 622–A:3, the state prison warden is given broad discretion in decisions relating to interstate transfers. *Breest v. Moran,* 571 F.Supp. 343, 346 (D.R.I.1983) (construing New Hampshire law) (citing *Goodnow, supra,* 120 N.H. at 671, 421 A.2d at 1010). Thus, absent a right to remain at NHSP, plaintiff simply has no liberty interest that could have been infringed by his transfer from NHSP.[7] *Id.; Goodnow, supra,* 120 N.H. at 671, 421 A.2d at 1010.

Having no liberty interest in remaining at NHSP under the Due Process Clause itself or under New Hampshire law, plaintiff is not constitutionally entitled to a hearing regarding his transfer to CCI. *Montanye, supra,* 427 U.S. at 242, 96 S.Ct. at 2547; *Laaman, supra,* 435 F.Supp. at 321; *Goodnow, supra,* 120 N.H. at 672, 421 A.2d at 1010. Nor does the court find that he is entitled to an independent determination of the confidential informant's reliability.

The cases cited by Guglielmo in support of his entitlement to an independent determination by the prison's adjudicating body of the confidential informant's reliability are inapposite and unhelpful. Each case involves a prisoner who has faced or is facing a disciplinary hearing that has resulted or may result in the loss of a protected liberty interest; e.g., in remaining in the general prison population or in good-time credits. *See Wells v. Israel,* 854 F.2d 995, 998–1001 (7th Cir.1988) (punitive and administrative segregation); *Hensley v. Wilson,* 850 F.2d 269, 276–77 (6th Cir.1988) (loss of good-time credits); *Freitas v. Auger,* 837 F.2d 806, 810–811 (8th Cir.1988) (solitary confinement, administrative segregation, lost good time, removal from honor roll); *Vasquez v. Coughlin,* 726 F.Supp. 466, 470–71 (S.D.N.Y.1989) (placement in Special Housing Unit). Guglielmo makes no allegations of any such deprivations, and he makes no suggestion that such liberty interests were at stake.

■ Finally, as to his claim that he was deprived of personal property in violation of his due process rights, the court finds it to be meritless. Guglielmo offers absolutely no facts as to what personal property he has been deprived of. As the court has previously noted, in civil rights cases "the claim must at least set forth minimal facts, not subjective characterizations...." *Dewey, supra,* 694 F.2d at 3.

Accordingly, plaintiff's second cause of action must be dismissed for failure to allege any constitutionally significant injury.

### 3. *Third Cause of Action*

■ Central to this claim is Guglielmo's allegation that his offender record contains a disciplinary report which never reached a disposition before a prison disciplinary board, thus allegedly denying him the opportunity to defend himself in compliance with prison procedural due process in violation of the Fourteenth Amendment.

As with prison transfers, "the language of the relevant ... regulations," *Thompson, supra,* 490 U.S. at 461, 109 S.Ct. at

---

7. Even assuming that Guglielmo could prove that the prison's procedural guidelines were not followed in relation to Mills's memo, prior decisions have made clear that procedural guide-

lines, standing alone, do not create a protected liberty interest. *Parenti v. Ponte,* 727 F.2d 21, 24 (1st Cir.1984).

1909, is controlling. If the regulations give the defendant prison officials discretion to provide a disciplinary hearing for such an infraction, no liberty interest has been created, and due process does not require procedural protections.

An analysis by the court of NHSP guidelines reveals that plaintiff's possession of contraband in his cell was a violation of NHSP prison guidelines, which could result in a disciplinary report. However, the guidelines do not mandate that every disciplinary report requires a disposition in front of a disciplinary board, as plaintiff seems to argue.[8] Furthermore, plaintiff does not allege that, as a result of the confiscation and lack of a disciplinary hearing, he has been deprived or will be deprived of any possibly protected liberty interest, such as denial of good-time credits or housing in the general prison population, which would entitle him to the minimal requirements of due process, including a hearing. *Wolff v. McDonnell*, 418 U.S. 539, 557, 94 S.Ct. 2963, 2975, 41 L.Ed.2d 935 (1974); *Superintendent, Mass. Correctional Inst. v. Hill*, 472 U.S. 445, 453, 105 S.Ct. 2768, 2772, 86 L.Ed.2d 356 (1985).

To recapitulate, the record does not establish a procedural due process violation as the result of any failure to conduct a hearing in this matter. Therefore, plaintiff's third cause of action must be dismissed with prejudice for failure to state a claim.

### 4. § 1983 Claim for Declaratory and Injunctive Relief

In his section 1983 claim, plaintiff also seeks declaratory and injunctive relief, alleging deprivations which resulted from materials retained in his offender record. These deprivations include his aforementioned transfer to an out-of-state prison, the denial of hearings to defend himself against both a disciplinary report and allegations contained in a transfer recommendation memo, and possible classification as a jailhouse lawyer, any of which could influence future decisions by prison classification boards. Plaintiff also claims that he may be involuntarily transferred again because of the pro se litigation in his file.

### a. Declaratory Relief

 Guglielmo's claim that the use of the materials at issue might influence future prison classification boards, post-conviction hearings, and involuntary transfers out of state does not meet the threshold requirement of an actual case or controversy. U.S. Const. art. III, § 2; 28 U.S.C. § 2201. Guglielmo has failed to show that the retention of these documents in his file by NHSP officials has violated or is likely to violate any protected liberty interests. As the court in *Olitsky v. O'Malley*, 597 F.2d 295, 299 (1st Cir.1979), stated, quoting *Golden v. Zwickler*, 394 U.S. 103, 110, 89 S.Ct. 956, 960, 22 L.Ed.2d 113 (1969), " 'The constitutional question, First Amendment or otherwise, must be presented in the context of a specific live grievance.' " Here, plaintiff states no more than speculative claims, ones that are mere conjecture at this time. Thus, he fails to meet the threshold requirement of ripeness. His claims regarding future harm do not demonstrate the prospect of "immediacy and reality" necessary to be considered violations of his liberty interests. *Zwickler, supra*, 394 U.S. at 109, 89 S.Ct. at 960; *Olitsky, supra*, 597 F.2d at 299.

### b. Injunctive Relief

 While the district court has the power to provide injunctive relief, Gugliel-

---

8. In the *Manual for the Guidance of Inmates* (1992 ed.) (Manual), "anything that has not been specifically permitted by proper authority to be in an inmate's cell, or possession of another inmate's property," is considered contraband which will be confiscated. Manual at 43–44. Possession of contraband is considered punishable conduct. *Id.* at 43.

However, the platoon commander on duty has the discretion to determine whether further action is necessary after a disciplinary report reporting confiscation of contraband is submitted to him by prison staff. *Id.* at 47. Further, the officer assigned to investigate a DR has the discretion to recommend to the Unit Manager that the case be dropped as not being worthy of further action. *Id.* at 49. The court notes that plaintiff submitted only two pages of what appears to be the three-page DR at issue. On the last page, sections entitled "Major's Action" and "Investigator's Action if scheduled for a Hearing" are blank. Exhibit I.

mo must first satisfy a threshold showing that "he is realistically threatened by a repetition of his experience;" otherwise, "he has not met the requirements for seeking an injunction in a federal court...." *Reyes, supra,* 834 F.2d at 1098 (citing *Los Angeles v. Lyons,* 461 U.S. 95, 109, 103 S.Ct. 1660, 1669, 75 L.Ed.2d 675 (1983)).

In *Reyes,* the plaintiff inmate claimed that the DEA's dissemination of information to several federal agencies that he was a terrorist was totally unfounded, and resulted in his receiving the maximum sentence for a relatively minor crime, as well as past deprivations of liberty interests. *Reyes, supra,* 834 F.2d at 1095. However, the First Circuit held that Reyes had not argued that he was being subjected to any continuing infringement of a liberty interest, or that he realistically expected a repetition of past infringements of his liberty interests. The appeals court distinguished Reyes's situation from that of the plaintiff in *Paine v. Baker,* 595 F.2d 197 (4th Cir.), *cert. denied,* 444 U.S. 925, 100 S.Ct. 263, 62 L.Ed.2d 181 (1979), who was in prison and did not want his future parole decisions to be based on erroneous information. *Id.* at 198.

The court finds the analysis in *Reyes* analogous to the situation at bar. Guglielmo, too, does not successfully argue that he is being subjected to any continuing infringement of a liberty interest. In fact, this court's analysis of Guglielmo's claims found that he failed to aver even a past infringement of a liberty interest. Moreover, Guglielmo has shown no upcoming decision affecting his liberty that could be based on the contested materials in his offender record. *Reyes, supra,* 834 F.2d at 1098. Even if plaintiff were to suffer a further transfer which could arguably be characterized as retaliatory, such a claim is construed by the court to be one for damages, rendering injunctive relief inappropriate. *See, e.g., Morales v. TWA,* — U.S. ——, ——, 112 S.Ct. 2031, 2035, 119 L.Ed.2d 157 (1992) ("It is a 'basic doctrine of equity jurisprudence that courts of equity should not act ... when the moving party has an adequate remedy at law and will not suffer irreparable injury if denied

equitable relief.'" (quoting *O'Shea v. Littleton,* 414 U.S. 488, 499, 94 S.Ct. 669, 678, 38 L.Ed.2d 674 (1974), and citing *Younger v. Harris,* 401 U.S. 37, 43–44, 91 S.Ct. 746, 750–51, 27 L.Ed.2d 669 (1971))).

The court notes that the two cases plaintiff cites do not bolster his claim, since both turned on constitutionally protected liberty interests not here at issue. *See Farinaro v. Coughlin,* 642 F.Supp. 276, 282 (S.D.N.Y.1986) (state created liberty interest in the degree of prison discipline, not the prison transfer claim, which was dismissed); *Bukhari v. Hutto,* 487 F.Supp. 1162, 1168 (E.D.Va.1980) (inmate's transfer to "C" custody reduced chances of parole, thus implicating a liberty interest).

Accordingly, the court concludes that plaintiff's request for equitable relief under section 1983 must be denied, as he fails to meet the necessary precondition for asserting an injunctive claim in federal court. *Lyons, supra,* 461 U.S. at 109, 103 S.Ct. at 1669. His claims are simply too speculative to afford him standing. *Id.*

### 5. *Equitable Expungement of Record*

Finally, plaintiff requests that the court exercise its equitable power to expunge his offender file of the aforementioned documents. While "requests to expunge are frequently made as a part of the relief requested in civil rights proceedings, of one type or another, against state or county officials," *United States v. Linn,* 513 F.2d 925, 927 (10th Cir.), *cert. denied,* 423 U.S. 836, 96 S.Ct. 63, 46 L.Ed.2d 55 (1975) (and authorities cited therein), the court's power to grant this relief is a narrow one, which should be reserved for the unusual or extreme case. *Id.* (wherein acquittal on lawful charges after lawful arrest was not sufficient to expunge record of arrest).

The First Circuit subscribes to the view expressed in *Linn, see Reyes, supra,* 834 F.2d at 1098, and notes that this narrowly construed power "has been used more often to expunge records of unconstitutional convictions," *id.* (citation omitted). Unlike the plaintiff in *Reyes,* Guglielmo has appar-

ently traveled the administrative avenues open to him by submitting a written request for expungement to both McCallum, attorney for the prison, and Warden Cunningham himself. *Id.* at 1098–99.

However, based on the record before it, the court holds that plaintiff's situation does not rise to the level of the unusual or extreme case warranting expungement. *Linn, supra,* 513 F.2d at 927; *Reyes, supra,* 834 F.2d at 1098. Thus, Guglielmo's alternative request for equitable expungement is also denied.

## Conclusion

For the reasons stated above, since plaintiff fails to allege facts sufficient to support most of his claims, his complaint is substantially dismissed with prejudice. *See Forte v. Sullivan,* 935 F.2d 1 (1st Cir.1991) ("where ... court has properly dismissed, following notice and an opportunity to amend, in a manner that would satisfy the procedural safeguards of Rule 12(b)(6), dismissal under § 1915(d) is also proper") (citing *Purvis v. Ponte,* 929 F.2d 822 (1st Cir.1991)). The sole claim that remains to go forward is the one alleging a retaliatory transfer.

SO ORDERED.